(No. 50584.—

(No. 50769.—

THE PEOPLE *ex rel.* COMPAGNIE NATIONALE AIR FRANCE, Petitioner, v. LOUIS J. GILIBERTO, Judge, *et al.*, Respondents.—EITAN ARONOWITCH *et al.*, Appellees, v. COMPAGNIE NATIONALE AIR FRANCE *et al.*, Appellants.

*Opinion filed December 4, 1978.*

94

Donald M. Haskell and Michael J. Sehr, of Haskell & Perrin, of Chicago (William J. Junkerman, William F. Martin, Jr., and Haight, Gardner, Poor & Havens, of New York, New York, of counsel), for appellant Compagnie Nationale Air France.

Stuart M. Speiser, John J. Kennelly, and Kevin M. Forde, of Chicago (Stuart M. Speiser, Charles F. Krause, Lawrence Goldhirsch, Howard S. Chapman, Kevin M. Forde, Mary C. Morrissy, and John J. Kennelly, of Speiser and Krause, of New York, New York, and Paul H. Baris, Esq., of Tel Aviv, Israel, Theodore Klein, of Paris, France, and David M. Lack, Q.C., of Montreal, Canada, of counsel), for appellees.

Donald M. Haskell and Michael J. Sehr, of Haskell & Perrin, of Chicago (William J. Junkerman, William F. Martin, Jr., and Haight, Gardner, Poor & Havens, of New York, New York, of counsel), for appellant Compagnie Nationale Air France.

Heineke & Schrader, of Chicago (Mendes & Mount, of New York, New York, of counsel), for appellant Singapore Airlines, Ltd.

Stuart M. Speiser, John J. Kennelly, and Kevin M. Forde, of Chicago (Stuart M. Speiser, Charles F. Krause,

Lawrence Goldhirsch, Howard S. Chapman, Kevin M. Forde, Mary C. Morrissy, and John J. Kennelly, of Speiser and Krause, of New York, New York, and Paul H. Baris, Esq., of Tel Aviv, Israel, Theordore Klein, of Paris, France, and David M. Lack, Q.C., of Montreal, Canada, of counsel), for appellees.

MR. CHIEF JUSTICE WARD delivered the opinion of the court:

Plaintiff Eitan Aronowitch and some 80 other named plaintiffs brought an action in the circuit court of Cook County against the defendants, Compagnie Nationale Air France (Air France), Singapore Airlines, Ltd. (Singapore), and Gulf Air Lines (Gulf), to recover damages for injuries suffered by the plaintiffs or for the deaths of the decedents of some of the plaintiffs at the hands of four terrorists who hijacked an Air France plane in which the plaintiffs or their decedents were traveling as passengers. For brevity we will use the term "plaintiffs" hereafter to include those plaintiffs' decedents.

Air France moved to dismiss the action on the ground that the court lacked jurisdiction of the action by virtue of article 28 of the Convention for Unification of Certain Rules Relating to International Transportation by Air, commonly known as the Warsaw Convention (49 Stat. 3000 *et seq.;* 49 U.S.C.A. note following section 1502; 3 Av. L. Rep. par. 27,012 *et seq.*) and on the further ground that the suit should be dismissed under the doctrine of *forum non conveniens.* Singapore moved to dismiss the action on the latter ground only.

The circuit court denied the motions to dismiss, and Air France and Singapore prosecuted an interlocutory appeal to the appellate court under Rule 308 (58 Ill. 2d R. 308). Air France was granted leave by this court to file a petition for a writ of *mandamus* directing the trial judge to dismiss Air France from the case. Thereafter we also

allowed motions by each defendant to transfer the appeals to the appellate court to this court under Rule 302(b) and to consolidate them with the action for *mandamus.*

The circumstances out of which the present action arose, as alleged in the complaint and in affidavits filed by the parties, are as follows: On the morning of June 27, 1976, the plaintiffs, along with other passengers, boarded an Air France plane at Tel Aviv, Israel. The plane was on a regularly scheduled flight to Paris, France, with an intermediate stop at Athens, Greece. The four persons who later hijacked the plane boarded it when it landed at Athens. A few minutes after the plane took off, the hijackers, who were heavily armed, entered the cockpit, commandeered the plane, and forced it to fly to Benghazi, Libya, where it remained about six hours for refueling. During this time the passengers, including the plaintiffs, were compelled to remain aboard. The plane was then forced to fly to Entebbe Airport in Uganda, where it landed at about 3:15 a.m. on June 28. After being kept on the plane for some six hours, the plaintiffs were placed in a vacant terminal building where they remained confined until July 4, when they were rescued by a force of Israeli commandos. The purpose of the hijackers was to hold the plaintiffs and other Jewish passengers as hostages against the release of terrorists being held prisoner in Israel.

None of the plaintiffs are citizens of the United States and none of them reside in the United States.

The complaint alleges that both during the time when they were airborne and also while they were held captive by the hijackers in Entebbe the plaintiffs suffered physical injuries and were threatened with death by the hijackers, and thus experienced nervous shock and mental distress.

The complaint charged Air France with negligence in failing to inspect passengers who boarded the plane at Athens and their luggage. It alleged that, if such an inspection had been made, the arms being carried by the

hijackers would have been discovered, the hijacking would have been thwarted, and the injuries inflicted on the plaintiffs would not have occurred. The complaint alleged that the four hijackers had reached Athens airport on a Singapore plane from Bahrain, to which they had been flown on a plane from Abu Dhabi operated by Gulf. Similar allegations of negligence in failing to conduct an inspection of passengers when they boarded were made against Singapore and Gulf. Gulf moved to dismiss the suit as to it on the ground that it had not been properly served with process. That motion is still pending in the circuit court, and Gulf is not a party to the present proceeding.

We consider first the contention made by Air France that suit against it was barred by the Warsaw Convention. Since the present proceeding appears to be the first in which a case of this character has been before this court, some background explanation is appropriate.

The Warsaw Convention became effective February 13, 1933, and was recognized and adhered to by the United States in 1934. In essence the Convention relates to the liability of air carriers for death and damages suffered by passengers in the course of "international transportation," a term which is defined by article 1(2) of the Convention as follows:

> "For the purposes of this convention the expression 'international transportation' shall mean any transportation in which, according to the contract made by the parties, the place of departure and the place of destination, whether or not there be a break in the transportation or a transshipment, are situated either within the territories of two High Contracting Parties, or within the territory of a single High Contracting Party, if there is an agreed stopping place within a territory subject to the sovereignty, suzerainty, mandate or authority of another power, even though that power is not a party to this convention."

Article 17 of the Convention imposes liability without

proof by a plaintiff of negligence or other fault on the part of the defendant:

> "The carrier shall be liable for damage sustained in the event of the death or wounding of a passenger or any other bodily injury suffered by a passenger, if the accident which caused the damage so sustained took place on board the aircraft or in the course of any of the operations of embarking or disembarking."

Article 20(1) provides a complete defense to the carrier, however, upon proof that it and its "agents have taken all necessary measures to avoid the damage or that it was impossible for him or them to take such measures."

Unless the death or damage was caused by what is termed the defendant's "wilful misconduct" (art. 25), the defendant's liability cannot exceed a monetary ceiling which is set by article 22. The original dollar equivalent of the ceiling was approximately $8,300. That ceiling was subsequently increased to about $16,000 by the so-called Hague Protocol of 1955 (3 Av. L. Rep. par. 27,101). The Protocol was signed by the executive branch of the United States government, but was never ratified by the Senate.

With respect to international transportation in which the United States is either the point of origin or of destination or is an agreed stopping place, the Convention and the Protocol were superseded in 1966 by an agreement between the United States and numerous carriers called the "Montreal Agreement" (3 Av. L. Rep. par. 27,130). Under that agreement the maximum damages recoverable were increased to $75,000 (inclusive of legal fees), and the carriers also agreed not to avail themselves of the due care defense contained in article 20(1) of the Convention. The Montreal Agreement was approved by the Civil Aeronautics Board in Order No. 18900 (31 Fed. Reg. 7302 (1966)).

For purposes of the present case neither the Hague Protocol nor the Montreal Agreement need be considered further. For accounts of the developments summarized

above see 49 U.S.C.A., note following sec. 1502; Lowenfeld & Mendelsohn, *The United States and the Warsaw Convention,* 80 Harv. L. Rev. 497 (1967); *Husserl v. Swiss Air Transport Co.* (S.D.N.Y. 1972), 351 F. Supp. 702, 703 n.1; *Husserl v. Swiss Air Transport Co.* (S.D.N.Y. 1975), 388 F. Supp. 1238, 1241 nn. 1 & 2, 1244.

The concerned provision in this case is article 28(1), which provides as follows:

> "An action for damages must be brought, at the option of the plaintiff, in the territory of one of the High Contracting Parties, either before the court of the domicile of the carrier or of his principal place of business, or where he has a place of business through which the contract has been made, or before the court at the place of destination."

It is Air France's position that its domicile is not the United States but France, since the latter is the nation in which the defendant is incorporated, and that Paris, France, is its principal place of business. While Air France does business in Cook County, the plaintiffs' contracts for passage were not made in this country; that is to say, their tickets were not purchased here. The place of destination of the Air France flight as specified on the plaintiffs' tickets was not the United States. Air France thus contends that the circuit court of Cook County does not fall within any of the alternative forums specified by article 28(1).

The plaintiffs, on the other hand, contend that Air France is domiciled in the United States because it conducts a "substantial" amount of "business" here, that article 28(1) of the Convention is inapplicable because the tickets purchased by the plaintiffs did not contain a notice of the limitation contained in that article of the places where suit might be brought; and that Air France waived any right to challenge the jurisdiction of the circuit court by having entered a general rather than a special appearance. To the extent that the Convention might be

applicable, the plaintiffs also contend that it is unconstitutional.

Before discussing the issues made between the parties we note preliminarily that it is now established that the hijacking of an airplane, and other acts of terrorism committed in the course of international flights, are "accidents" within the meaning of article 17. *Husserl v. Swiss Air Transport Co.* (S.D.N.Y. 1972), 351 F. Supp. 702, *aff'd mem.* (2d Cir. 1973), 485 F.2d 1240; *Day v. Trans World Airlines, Inc.* (2d Cir. 1975), 528 F.2d 31, 33, 37-38, *cert. denied* (1976), 429 U.S. 890, 50 L. Ed. 2d 172, 97 S. Ct. 246; *Karfunkel v. Compagnie Nationale Air France* (S.D.N.Y. 1977), 427 F. Supp. 971.

The complaint alleges:

> "During the said seizure and diversion of said flight to Uganda and during detention from June 27, 1976 until their release, at the Entebbe Airport, said plaintiffs were severely injured, threatened, hurt, denied adequate shelter, clothing, food and drink, proper sanitary facilities and medical attention and put in fear for their health and their lives, resulting in injuries to them and each of them."

From more specific allegations made later in the complaint it appears that some, at least, of the threats and physical injuries to which the plaintiffs were allegedly subjected may not have taken place while they were aboard the plane but rather while they were kept in detention at Entebbe. Assuming that to be the case the Warsaw Convention would not thereby be rendered inapplicable to this suit. Its applicability, under article 17, depends upon the place where the "accident," rather than the resulting injuries, occurred, and the "accident," as already noted, consisted of the hijacking itself. (*Cf. Husserl v. Swiss Air Transport Co.* (S.D.N.Y. 1975), 388 F. Supp. 1238, 1245-46.) Moreover, the removal of the plaintiffs by the hijackers at a point which was neither their intended destination nor an intended intermediate stop cannot

realistically be looked upon as a "disembarkation" which would terminate Air France's liability under article 17. *Cf. MacDonald v. Air Canada* (1st Cir. 1971), 439 F.2d 1402; *Hernandez v. Air France* (1st Cir. 1976), 545 F.2d 279, *cert. denied* (1977), 430 U.S. 950, 51 L. Ed. 2d 800, 97 S. Ct. 1592; *Maugnie v. Compagnie Nationale Air France* (9th Cir. 1977), 549 F.2d 1256, *cert. denied* (1977), 431 U.S. 974, 53 L. Ed. 2d 1072, 97 S. Ct. 2939.

The plaintiffs' first contention is that Air France is domiciled in the United States. They say that the domicile of a corporation as that term is used in article 28(1) includes any country where the airline carries on its business on "a regular and substantial basis," and that the United States qualifies under such a definition. The meaning of domicile cannot, however, be so extended. The domicle of a corporation is customarily regarded as the place where it was incorporated, and the courts have given that meaning to the term as it is used in article 28(1) of the Convention. (See *Smith v. Canadian Pacific Airways, Ltd.* (2d Cir. 1971), 452 F.2d 798, 802; *Nudo v. Societe Anonyme Belge d'Exploitation de la Navigation Aerienne Sabena Belgian World Airlines* (E.D. Pa. 1962), 207 F. Supp. 191; *Karfunkel v. Compagnie Nationale Air France* (S.D.N.Y. 1977), 427 F. Supp. 971, 974.) Moreover, the structure of article 28(1), viewed as a whole, is also incompatible with the plaintiffs' claim. The article, in stating that places of business are among the bases of jurisdiction, sets out two places where an action for damages may be brought: the country where the carrier's principal place of business is located, and the country in which it has a place of business through which the particular contract in question was made, that is, where the ticket was bought. Adopting the plaintiffs' theory would at a minimum blur these carefully drawn distinctions by creating a third intermediate category. It would obviously introduce uncertainty into litigation under the

article because of the necessity of having to determine, and without standards or criteria, whether the amount of business done by a carrier in a particular country was "regular" and "substantial." The plaintiffs' request to adopt this basis of jurisdiction is in effect a request to create a new jurisdictional standard for the Convention.

The plaintiffs next contend that the tickets issued to them did not inform them of the limitations under article 28(1). The plaintiffs claim this was equivalent to a failure to advise them of the monetary limitation on liability contained in article 22, an omission which precludes a carrier from reliance on that limitation. *Lisi v. Alitalia-Linee Aeree Italiane* (2d Cir. 1966), 370 F.2d 508, *aff'd by an equally divided court* (1968), 390 U.S. 455, 20 L. Ed. 2d 27, 88 S. Ct. 1193.

Article 3(1)(e) requires a ticket to carry "a statement that the transportation is subject to the rules relating to liability established by this convention," and article 3(2) provides:

> "The absence, irregularity, or loss of the passenger ticket shall not affect the existence or the validity of the contract of transportation, which shall none the less be subject to the rules of this convention. Nevertheless, if the carrier accepts a passenger without a passenger ticket having been delivered he shall not be entitled to avail himself of those provisions of this convention which exclude or limit his liability."

The provision of article 28(1) limiting the places where a carrier may be sued are not provisions "which exclude or limit his liability," and the latter phrase refers only to the monetary ceiling on damages found in article 22. The Hague Protocol of 1955 confirmed such a reading of article 3(2) by amending that provision (which was then renumbered as paragraph (2)) so as to read:

> "The passenger ticket shall constitute *prima facie* evidence of the conclusion and conditions of the contract of carriage. The absence, irregularity or loss of the

> passenger ticket does not affect the existence or the validity of the contract of carriage which shall, none the less, be subject to the rules of this Convention. Nevertheless, if, with the consent of the carrier, the passenger embarks without a passenger ticket having been delivered, or if the ticket does not include the notice required by paragraph 1(c) of this Article, the carrier shall not be entitled to avail himself of the provisions of Article 22."

Even without this amendment by the Hague Protocol, however, courts have declined to extend article 3(2) of the Warsaw Convention to situations in which the information omitted from a ticket related to matters beyond the monetary liability ceilings of article 22. Thus, in *Molitch v. Irish International Airlines* (2d Cir. 1970), 436 F.2d 42, it was unsuccessfully contended that the failure to inform a passenger of the two years' limitations period specified in article 29(1) of the Convention barred reliance on that period. The court held that the limitations period was not "a provision which excludes or limits liability" within the meaning of section 3(2). (436 F.2d 42, 44.) Similarly in *Butler's Shoe Corp. v. Pan American World Airways, Inc.* (5th Cir. 1975), 514 F.2d 1283, the court held that a tariff provision specifying the time within which a notice of loss must be filed was not void as constituting a provision "relieving a carrier of liability" and thus void under article 23. As explained in *Lisi v. Alitalia-Linee Aeree Italiane* (2d Cir. 1966), 370 F.2d 508, 512-13, the purpose of requiring disclosure to a passenger that the amount of recovery may be limited if he should be killed or injured in an accident is to enable the prospective passenger to take protective measures such as taking out additional insurance. Having given an advantage to the carrier by reducing liability, it is understandable that the Convention should require that a passenger should be made aware of it.

We perceive no comparable reason, however, why the individual passengers here would have cared to know in which Convention country his action for damages must be

brought, since the same damages limitation would apply in each. It was observed in *Molitch,* with respect to the statute of limitations, that "[a] prospective passenger is unlikely to care about the length of the statute of limitations and it is difficult to conceive of any protective measures that he might take prior to boarding the plane were he notified of the limitation." (436 F.2d 42, 44.) We consider the same is true with respect to a restriction as to the countries in which suit must be brought.

The plaintiffs also argue that Air France waived the benefit of article 28 because it did not file a special appearance but appeared generally. We also reject this contention. Under section 20 of the Civil Practice Act (Ill. Rev. Stat. 1977, ch. 110, par. 20), a special appearance is a vehicle "for objecting to the jurisdiction of the court over the person of the defendant." Air France was properly served with process, and no question of personal jurisdiction over it is involved. Challenges to jurisdiction over the subject matter of an action are dealt with by other sections of the Act, namely sections 43(3) and 48(1)(a).

Lack of subject matter jurisdiction cannot be waived. Thus, in *People v. Sanitary District* (1904), 210 Ill. 171, this court held that the State's sovereign immunity under the 1870 Constitution could not be waived by the Attorney General's entry of an appearance for the State as a defendant. In *Werner v. Illinois Central R.R. Co.* (1942), 379 Ill. 559, it was held that a statutory limitation of the jurisdiction of a city court to those cases arising within the city could not be enlarged by the consent of the parties and "was not waived by defendant's appearance and participation in the trial." (379 Ill. 559, 566.) In *Crane Paper Stock Co. v. Chicago & Northwestern Ry. Co.* (1976), 63 Ill. 2d 61, 68, we recently reaffirmed the rule invoked in the *Werner* case.

The plaintiffs, without citation of any supporting decision, make two responses to the principle stated above.

The first is that the subject matter here is the general power of a circuit court to entertain "original jurisdiction of all justiciable matters" (Ill. Const. 1970, art. VI, sec. 9). We consider that this argument begs the question, for what the Convention does is to remove from the general jurisdiction of the circuit courts those claims arising out of "international transportation" for which the circuit courts are, because of article 28(1), not suitable forums.

The principle is analogous to the statutory exclusion from circuit court jurisdiction of suits against the State, which must be brought in the Court of Claims (see section 8 of the Court of Claims Act (Ill. Rev. Stat. 1977, ch. 37, par. 439.8)), even though in the Court of Claims the amount recoverable is limited and many procedural rights enjoyed by a plaintiff in a circuit court proceeding are inapplicable. *Seifert v. Standard Paving Co.* (1976), 64 Ill. 2d 109; *Williams v. Medical Center Com.* (1975), 60 Ill. 2d 389.

The plaintiffs' second argument appears to accept the proposition that subject matter jurisdiction is not waivable, but seeks to avoid that result by asserting that what is involved here is not true subject matter jurisdiction but a separate category called "treaty jurisdiction."

On occasion a Federal court has referred to article 28(1) as establishing "treaty jurisdiction." (See *Smith v. Canadian Pacific Airways, Ltd.* (2d Cir. 1971), 452 F.2d 798, 801-02.) For purposes of the court's discussion, the term was coined in order to draw a distinction from the "power of a particular United States court, under federal statutes and practice, to hear a Warsaw Convention case—jurisdiction in the domestic law sense." (452 F.2d 798, 800.) The court in *Smith* also held that article 28(1) did not refer to venue, as opposed to jurisdiction, a point with which the plaintiffs agree in their brief, where it is stated, "There is no 'venue' issue herein." *Smith* also pointed out the language of article 32 of the Convention

prohibiting alteration of rules "as to jurisdiction." (452 F.2d 798, 801.) There is nothing in *Smith* to show a disposition to dilute or attenuate the nonwaiver rule which applies to subject matter jurisdiction.

Since 1938 there has been no provision for a special appearance in the Federal Rules of Civil Procedure. (15 Wright, Miller & Cooper, Federal Practice and Procedure sec. 3829, at 196 (1976).) The narrow question of waiver of article 28(1) by entry of a general appearance which the plaintiffs raise has not thus arisen in the Federal court decisions. The Federal courts, however, have repeatedly granted motions to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure for want of jurisdiction because of the provisions of article 28(1). See *Smith v. Canadian Pacific Airways, Ltd.* (2d Cir. 1971), 452 F.2d 798; *Nudo v. Societe Anonyme Belge d'Exploitation de la Navigation Aerienne Sabena Belgian World Airlines* (E.D. Pa. 1962), 207 F. Supp. 191; *Karfunkel v. Compagnie Nationale Air France* (S.D.N.Y. 1977), 427 F. Supp. 971; *Butz v. British Airways* (E.D. Pa. 1976), 421 F. Supp. 127, *aff'd mem.* (3d Cir. 1977), 566 F.2d 1168.

The final contention of the plaintiffs as to article 28(1) of the Convention is that, if applicable, the article deprives them of rights guaranteed by the Constitution of the United States. The trial court, upon the denial of the defendants' motions to dismiss, expressed doubts as to constitutionality, but the validity of article 28(1) was not among the questions certified for review.

The plaintiffs do not cite any decision holding the Convention invalid, either with respect to article 28(1) or otherwise, nor indeed does their brief set forth the ground on which its validity is questioned here. Their brief only states, "Plaintiffs do not desire to waive this point but it would unduly lengthen this brief to argue the alleged unconstitutionality of Article 28(1)," and they simply refer this court to a portion of a brief filed in the trial

court which is addressed to this issue. It would not be unreasonable to say that the plaintiffs by proceeding in this manner have waived their point as to unconstitutionality in this court under our Rule 341(e)(7) (58 Ill. 2d R. 341(e)(7)), but we have nevertheless examined the trial court brief.

From that brief, it appears that the constitutional challenge asserted here rests only on the claim that the circuit court of Cook County, in the plaintiffs' words, "[i]s one of the few forums, perhaps the only one on this planet, where all three defendant airlines carry on business and are subject to process." From this, the plaintiffs assert, it follows that dismissal of this suit would deprive them of due process of law. The contention does not persuade. It is not unique to article 28(1) that a plaintiff may be unable to sue all defendants in a single action, whether because of lack of personal jurisdiction, venue problems, subject matter limitations on Federal or State court jurisdiction, or the like. The plaintiffs cite no authority for the proposition that such inability amounts to a deprivation of due process.

For the reasons given, we hold that the trial court was in error in denying the motion by Air France to dismiss it from the suit on the ground that suit was barred by the Warsaw Convention.

While the foregoing discussion disposes of the appeal by Air France, there remains to be considered the appeal by Singapore, which, since the complaint did not allege any injury to its own passengers, so as to make the Warsaw Convention applicable, based its motion solely on the ground that the doctrine of *forum non conveniens* required dismissal of the case.

Our holding that the plaintiffs' suit against Air France could not be brought in Cook County because of the · Warsaw Convention would seem to diminish, if not eliminate, the suitability of Cook County as a forum for

the plaintiffs. The dismissal of Air France from the suit removes the base of the plaintiffs' desire to retain Singapore in the circuit court of Cook County.

The single question presented as to Singapore in the trial court was described by that court as "whether the circuit court of Cook County is an improper forum to litigate this action." For us, on Singapore's appeal, the question is whether it was an abuse of discretion for the trial court to have denied Singapore's motion to dismiss on the ground of *forum non conveniens.* We will consider this question on Singapore's appeal to us. We state this because Singapore was never joined as a party to Air France's original petition for a writ of *mandamus,* although to judge from its briefs Singapore assumes it was joined. Singapore refers to our order of May 25, 1978, as having granted it leave to join in the petition of Air France under Supreme Court Rule 381 (58 Ill. 2d R. 381). That order, however, simply granted Singapore leave to transfer its Rule 308 interlocutory appeal from the appellate court to this court and to consolidate the cause with Air France's petition for *mandamus* which was pending before us and with its previously transferred appeal.

The doctrine of *forum non conveniens* was succinctly described in *Adkins v. Chicago, Rock Island & Pacific R.R. Co.* (1973), 54 Ill. 2d 511, 514:

"*Forum non conveniens* is a doctrine that is founded in considerations of fundamental fairness and sensible and effective judicial administration. In the application of these basic considerations a court may decline jurisdiction of a case 'even though it may have proper jurisdiction over all parties and the subject matter involved' (*Whitney v. Madden* (1948), 400 Ill. 185, 189, *cert. denied,* 335 U.S. 828, 93 L. Ed. 382, 69 S. Ct. 55), whenever it appears that there is another forum that can better 'serve the convenience of the

parties and the ends of justice.' (*Lonergan v. Crucible Steel Co. of America* (1967), 37 Ill. 2d 599, 606.)"

Whether particular facts and circumstances warrant dismissal of a case on the ground of *forum non conveniens* rests primarily within the discretion of the trial court. The court's decision will be reversed on review if it can be said that in deciding as it did there was an abuse of discretion. *Fender v. St. Louis Southwestern Ry. Co.* (1971), 49 Ill. 2d 1, 4; *Lonergan v. Crucible Steel Co. of America* (1967), 37 Ill. 2d 599, 606; *Cotton v. Louisville & Nashville R.R. Co.* (1958), 14 Ill. 2d 144, 159; *Whitney v. Madden* (1948), 400 Ill. 185, 190.

A comprehensive statement of factors to be weighed in considering dismissal of a case under *forum non conveniens* is found in the often cited case of *Gulf Oil Corp. v. Gilbert* (1947), 330 U.S. 501, 508-09, 91 L. Ed. 1055, 1062-63, 67 S. Ct. 839, 843:

"Wisely, it has not been attempted to catalogue the circumstances which will justify or require either grant or denial of remedy. ***

If the combination and weight of factors requisite to given results are difficult to forecast or state, those to be considered are not difficult to name. An interest to be considered, and the one likely to be most pressed, is the private interest of the litigant. Important considerations are the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive. *** The court will weigh relative advantages and obstacles to fair trial. It is often said that the

plaintiff may not, by choice of an inconvenient forum, 'vex,' 'harass,' or 'oppress' the defendant by inflicting upon him expense or trouble not necessary to his own right to pursue his remedy. But unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed.

Factors of public interest also have place in applying the doctrine. Administrative difficulties follow for courts when litigation is piled up in congested centers instead of being handled at its origin. Jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation. In cases which touch the affairs of many persons, there is reason for holding the trial in their view and reach rather than in remote parts of the country where they can learn of it by report only. There is a local interest in having localized controversies decided at home. There is an appropriateness, too, in having the trial of a diversity case in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems in conflict of laws, and in law foreign to itself."

The only connection between the forum in which the suit was brought, the circuit court of Cook County, and Singapore is the circumstance that Singapore, which is not an American corporation, maintains a sales office in Illinois, although it operates no passenger flights into or out of the United States. All of the plaintiffs are nonresident aliens, and no plaintiff purchased a ticket in the United States or was ticketed to a final destination in this country. The occurrences giving rise to this suit took place in, or en route to, Bahrain, Greece, Libya, and Uganda. The substantive law which would at a trial be

applied to the plaintiffs' claims would be that of those, and possibly of other, foreign countries. Intricate questions involving foreign law may have to be resolved. (*Cf. Marchlik v. Coronet Insurance Co.* (1968), 40 Ill. 2d 327.) None of the conduct of which the plaintiffs complain occurred in Illinois. It is difficult, indeed, to assume a situation in which the parties and operative facts of a case have a lesser connection with the forum of Cook County.

A motion to dismiss on the ground of *forum non conveniens* presupposes that more than one court can be used as a forum. (*Adkins v. Chicago, Rock Island & Pacific R.R. Co.* (1973), 54 Ill. 2d 511, 515.) Singapore has suggested the United Kingdom as an alternative forum; all of the defendants operate commercial flights into London and are amenable to service of process there. Singapore also points out that the courts of the United Kingdom are thousands of miles closer to all sources of proof; discovery has already commenced in London, Singapore states, and at least one so-called protective suit has been filed in England by one of the plaintiffs in this suit. Of course, Singapore and Air France operate flights into and out of Greece, where the hijackers alighted from one carrier's plane and boarded the other's; and Singapore, Air France and Gulf all operate flights into and out of France and the Netherlands. Any of these potential forums would provide, in varying degrees, greater "relative ease of access to sources of proof," and lesser "cost of obtaining attendance of willing witnesses" than a forum in the center of the United States. *Gulf Oil Corp. v. Gilbert* (1947), 330 U.S. 501, 508, 91 L. Ed. 1055, 1062, 67 S. Ct. 839, 843.

We must take notice, too, of the crowded condition of the dockets of the circuit court of Cook County, "congested with litigation having a closer connection to it than the cause here concerned" (*Marchlik v. Coronet Insurance Co.* (1968), 40 Ill. 2d 327, 336), and the long delays

between suits filed and jury verdicts obtained. See *Fender v. St. Louis Southwestern Ry. Co.* (1971), 49 Ill. 2d 1, 6.

Too, as we observed earlier in this opinion, the Supreme Court has stated: "Jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation." (*Gulf Oil Corp. v. Gilbert* (1947), 330 U.S. 501, 508-09, 91 L. Ed. 1055, 1062, 67 S. Ct. 839, 843.) This factor and the now overburdened condition of the dockets in the circuit court of Cook County which we have just described must be considered important in this case, which involves an incident which occurred thousands of miles from the forum, and which does not involve a single party who is a citizen of Illinois or, for that matter, of the United States.

Referring to suits by noncitizen and nonresident plaintiffs based on events that occurred outside the United States and that involved the application of foreign law, courts have allowed motions for dismissal on the ground of *forum non conveniens* in the absence of special and unusual circumstances. In *Fitzgerald v. Westland Marine Corp.* (2d Cir. 1966), 369 F.2d 499, the court affirmed the dismissal, on grounds of *forum non conveniens,* of a negligence action brought by a public administrator on behalf of the estates of 31 Spanish nationals and one Yugoslavian national against corporations of Japan and British Columbia, and a New York corporation, against whom suit was dismissed on other grounds. In answer to the plaintiffs' contention that New York was the only jurisdiction where all three defendants could be sued at once, the court noted that the complaint against the New York corporation had already been properly dismissed and that no showing had been made of the unavailability of another forum in which the two remaining defendants could be sued. The reasons given for finding in favor of the defendants were that nearly all relevant witnesses to the main issue resided in Japan, no compulsory process for

witnesses was available, the cost of bringing witnesses to New York would be exorbitant, New York had little connection with the accident, which occurred off the coast of Alaska, the resolution of legal questions would entail interpretation of Japanese and Canadian law, and all deceased crewmen, with one possible exception, were foreigners.

*Vanity Fair Mills, Inc. v. T. Eaton Co.* (2d Cir. 1956), 234 F.2d 633, *cert. denied* (1956), 352 U.S. 871, 1 L. Ed. 2d 76, 77 S. Ct. 96, involved a trademark-infringement and unfair-competition action. The suit was brought against Canadian defendants on a cause of action which arose in Canada, and it presented Canadian trademark issues which would be governed by Canadian trademark law. The court affirmed a dismissal of the suit on the grounds of *forum non conveniens* as to the above-described portion of the complaint, even though the plaintiff was an American corporation.

Among the many cases in which motions for dismissal were allowed on the ground of *forum non conveniens* where the factors present resembled those we are considering here are the following: *Spencer v. Alcoa Steamship Co.* (E.D.N.Y. 1963), 221 F. Supp. 343, *aff'd* (2d Cir. 1963), 324 F.2d 957; *Heitner v. Zim Israel Navigation Co.* (S.D.N.Y. 1957), 152 F. Supp. 3; *To Po Nyo v. J. Fritz Co.* (1971), 38 App. Div. 2d 528, 326 N.Y.S.2d 868, *appeal dismissed* (1972), 30 N.Y.2d 772, 284 N.E.2d 582, 333 N.Y.S.2d 430; *Lambiris v. Neptune Maritime Co.* (1971), 38 App. Div. 2d 528, 326 N.Y.S.2d 862; *Hernandez v. Cali, Inc.* (1969), 32 App. Div. 192, 301 N.Y.S.2d 397, *aff'd mem.* (1968), 27 N.Y.2d 903, 265 N.E.2d 921, 317 N.Y.S.2d 625; *Carey v. Southern Peru Copper Corp.* (1968), 20 App. Div. 2d 744, 287 N.Y.S.2d 599; *Gilchrist v. Trans-Canada Air Lines* (1966), 27 App. Div. 524, 275 N.Y.S.2d 394; *Faulkner v. S.A. Empresa de Viaco Airea Rio Grandense* (Fla. App. 1969), 222 So. 2d 805. See also

*Canada Malting Co. v. Paterson Steamships, Ltd.* (1932), 285 U.S. 413, 423, 76 L. Ed. 837, 842-43, 52 S. Ct. 413; *Moutzouris v. National Shipping & Trading Co.* (S.D.N.Y. 1961), 196 F. Supp. 482; *Monteiro v. Sociedad Mar. San Nicolas, S.A.* (S.D.N.Y. 1959), 175 F. Supp. 1, *rev'd on other grounds* (2d Cir. 1960), 280 F.2d 568, *cert. denied* (1960), 364 U.S. 915, 5 L. Ed. 2d 228, 81 S. Ct. 272; *De Sairigne v. Gould* (S.D.N.Y. 1949), 83 F. Supp. 270, 272, *aff'd* (2d Cir. 1949), 177 F.2d 515, *cert. denied* (1950), 339 U.S. 912, 94 L. Ed. 1338, 70 S. Ct. 571.

The cases offered by the plaintiffs to support their contention that the case should be retained in the circuit court of Cook County involved circumstances importantly different from those here. In *Varkonyi v. S.A. Empresa De Viacao Airea Grandense (Varig)* (1968), 22 N.Y.2d 333, 239 N.E.2d 542, 292 N.Y.S.2d 670, the Court of Appeals of New York ordered reconsideration of an order dismissing on the ground of *forum non conveniens,* but the court did so in the light of "special and unusual circumstances" (22 N.Y.2d 333, 338, 239 N.E.2d 542, 544, 292 N.Y.S.2d 670, 674). Among those special and unusual circumstances it found were that other actions against the defendants based on the same occurrence were pending in Federal and State courts in New York. It had been agreed by the parties that pretrial discovery would be consolidated among those cases to conserve time and expense. Another circumstance was that there was an American defendant, a manufacturer, and the issue of the manufacturer's liability was inseparably connected with the issue of the airline's faulty operation and maintenance. *Eck v. United Arab Airlines, Inc.* (2d Cir. 1966), 360 F.2d 804, simply did not involve *forum non conveniens.* The holding of the court was that the trial court had jurisdiction under article 28(1) of the Warsaw Convention. The plaintiff, whose residence was in California, had purchased her ticket in California through an agent of the

defendant carrier.

The other cases the plaintiffs cite (*Motor Distributors v. Olaf Pedersen's Rederi A/S* (5th Cir. 1956), 239 F.2d 463, *cert. denied* (1957), 353 U.S. 938, 1 L. Ed. 2d 760, 77 S. Ct. 816, and *Kloeckner Reederei Und Kohlenhandel, G.M.B.H. v. A/S Hakedal* (2d Cir. 1954), 210 F.2d 754, *appeal dismissed* (1954), 348 U.S. 801, 99 L. Ed. 633, 75 S. Ct. 17) were cases involving collisions on the high seas and questions of Federal admiralty jurisdiction. *Motor Distributors* simply acknowledged the right of a libelant possessing a maritime lien to proceed in the jurisdiction where the vessel was found, and *Kloeckner* recognized the right of a libelant to sue an alien defendant where his property could be attached.

We consider that the circuit court of Cook County is a distant, uninvolved and inappropriate forum in relation to the parties and incidents that occurred thousands of miles from Illinois. There are other forums as between the plaintiffs and Singapore (and the other defendants as well) that would better serve the accomplishment of justice, the convenience of the parties, and the courts. The trial court abused discretion in denying the motion of Singapore to dismiss on the ground of *forum non conveniens.*

For the reasons given, the order of the circuit court denying the motions of Air France and of Singapore to dismiss are vacated and the cause is remanded to the circuit court of Cook County with directions to dismiss the action as to Air France and Singapore. In view of the disposition we make it is unnecessary to consider the petition of Air France for a writ of *mandamus;* the petition is accordingly dismissed.

*50584 — Petition dismissed.*

*50769 — Order vacated; cause remanded, with directions.*