(No. 58108.—

CRISPIN MAUNDER, Appellee, v. DeHAVILLAND AIR-CRAFT OF CANADA, LTD., Appellant.—SAMUEL J. BETAR, Adm'r, Appellee, v. DeHAVILLAND AIR-CRAFT OF CANADA, LTD., Appellant.

*Opinion filed June 29, 1984.*

SIMON, J., specially concurring.

Lord, Bissell & Brook, of Chicago (Thomas J. Strueber, Richard E. Mueller, and Hugh C. Griffin, of counsel), for appellant.

Leonard M. Ring & Associates, of Chicago (Leonard M. Ring and Judith E. Fors, of counsel), for appellees.

JUSTICE CLARK delivered the opinion of the court:

This appeal requires us to determine whether the circuit court of Cook County has jurisdiction over DeHavilland Aircraft of Canada, Ltd., a foreign corporation. More specifically, we are asked to determine whether the defendant was doing business in Illinois in order to be

amenable to service of process and subject to the laws of this State.

These consolidated actions to recover for personal injury and wrongful death are based on the crash of an airplane designed and manufactured by defendant, De-Havilland Aircraft of Canada, Ltd. (Ltd.). The airplane crash occurred on May 3, 1976, in Lusaka, Zambia, during a demonstration flight for the Zambian Air Force and caused the death of Raghubir Dutt Law, a citizen of India and a member of the Zambian Air Force. Mr. Law's widow and children are also Indian citizens. Plaintiff Crispin Maunder, an English citizen and a passenger in the aircraft, was injured in the same crash. In April 1977, Samuel J. Betar, public administrator of Cook County, was appointed administrator of the estate of decedent Law by the probate division of the circuit court of Cook County. On April 28, 1977, Betar filed suit in the circuit court of Cook County against Ltd. and De-Havilland Canada, Inc. (Inc.), a Delaware corporation with its principal office and principal place of business in Rosemont, Illinois. Inc. is a wholly owned subsidiary of Ltd. and sells and distributes parts for airplanes manufactured by Ltd.

On March 17, 1977, Crispin Maunder filed suit in the circuit court of Cook County against Inc. and Ltd. Service in the Law and Maunder suits was effectuated by leaving copies of the complaint and summons with an employee of Inc. in the Rosemont office.

On May 27, 1977, the defendants filed petitions to remove both causes to the United States District Court for the Northern District of Illinois. Inc. was voluntarily dismissed from both causes, leaving Ltd. as the sole defendant. A protracted procedural battle ensued in Federal court. Both causes were eventually remanded to the circuit court of Cook County because there was no diversity of citizenship between aliens Maunder (England),

Law (India) and Ltd. (Canada). *Betar v. DeHavilland Aircraft of Canada, Ltd.* (7th Cir. 1979), 603 F.2d 30, *cert. denied* (1980), 444 U.S. 1098, 62 L. Ed. 2d 785, 100 S. Ct. 1064.

On May 20, 1981, the circuit court granted Ltd.'s motion to dismiss, noting:

> "Analyzing the nature and quality of the contacts with the State of Illinois, this court cannot say that it would be fair and reasonable to require DeHavilland Aircraft Ltd., a Canadian Corp., to defend this action in Illinois."

The appellate court reversed the circuit court's order and remanded the cause to the circuit court, ruling that Ltd.'s Illinois subsidiary, Inc., provided sufficient contacts to invoke the jurisdiction of Illinois courts. (112 Ill. App. 3d 879.) We granted defendant's petition for leave to appeal. (87 Ill. 2d R. 315(a).) We now affirm the decision of the appellate court.

Ltd.'s corporate offices and principal place of business are in Downsview, Ontario. Ltd. has manufactured "Twin Otter" propeller-driven planes for many years, and these planes are used all over the world for short passenger flights. The record reveals that there were 885 DeHavilland Ltd. aircraft operating in the United States in 1982. In 1971, Ltd. established a subsidiary corporation, DeHavilland Canada, Inc., to facilitate Ltd.'s business operations in the United States. Inc. is a wholly owned subsidiary of Ltd., and all of Inc.'s stock is owned by Ltd. The salaries of Inc.'s directors are paid by Ltd., and Ltd. guaranteed Inc.'s lease in Rosemont. The record reveals that an average of eight telephone calls per day were made from Inc.'s office to the parent's office in Ontario. The subsidiary's sole business is the sale of aircraft parts for DeHavilland aircraft. The manual of Inc. provides the following descriptions of the relationship between Ltd. and Inc.:

> "DeHavilland Aircraft of Canada has incorporated a subsidiary company in the United States of America. The

registered name and address of the Company is:
DEHAVILLAND CANADA INC.
5321 North Pearl Street
Rosemont Illinois 60018
The Company is controlled by the Parent Company and will operate under the authority of the Vice President [of] Sales. The function of this Company is to provide Product Support to the American users of the Parent Company's products."

Ltd. has included Inc. in advertisements published in American aviation journals. One full-page advertisement contained the following claims:

"**How to carry 3 million passengers an average of 42 miles each. And make it pay.**
\*\*\*

In the last 10 years, Golden West has flown over 168,400,000 passenger miles, making it the largest commuter airline in the U.S.A. Their 12 Twin Otters have made an astonishing 1,387,000 landings. \*\*\*

\*\*\* [D]e Havilland Twin Otter proves 99.9% reliable. Rugged airframe and simple systems keep maintenance to a minimum. Quiet turboprops with TBOs of over 8,000 hours conserve fuel, and reverse to shorten landings and extend brake life.

Golden West President James M. Harmon sums up his passengers' satisfaction with Twin Otter: 'They know they can depend on its comfort, convenience and on-time reliability.' And to short haul operators, that's pure gold.
The de Havilland Aircraft of Canada, Limited
Downsview, Ontario. M3K 1Y5
Telephone: (416) 633-7310
Telex: 0622128.    Cable: MOTHTOR, Toronto.
*DE HAVILLAND* **Twin Otter**
**The standard of dependability and versatility around the world.**
Twin Otter service and spares support also available through de Havilland Canada Inc., 5321 North Pearl Street, Rosemont, Illinois 60018. Telephone (312) 678-

. 8380. Telex 00726409.''

In this appeal, we are only concerned with the issue of jurisdiction. The merits of this case have never been addressed in more than seven years of litigation. We begin our discussion of the jurisdictional arguments by noting that the plaintiffs do not contend that Illinois courts have jurisdiction based on the long-arm statute (Ill. Rev. Stat. 1981, ch. 110, par. 2—209). Rather, the plaintiffs contend that Ltd.'s contacts with Illinois constituted ''doing business'' in Illinois, thus subjecting Ltd. to the personal jurisdiction of Illinois courts.

The United States Supreme Court has determined that a State's power to enter *in personam* judgments binding on nonresident defendants is limited by the due process clause of the fourteenth amendment (U.S. Const., amend. XIV) (due process guarantees made applicable to the States by the fourteenth amendment). Criteria for such determinations were delineated in *International Shoe Co. v. Washington* (1945), 326 U.S. 310, 90 L. Ed. 95, 66 S. Ct. 154. State courts may invoke personal jurisdiction over a nonresident defendant that has minimum contacts with the forum, so long as the suit does not offend '' 'traditional notions of fair play and substantial justice.' '' (326 U.S. 310, 316, 90 L. Ed. 95, 102, 66 S. Ct. 154, 158.) The court noted:

> ''Whether due process is satisfied must depend rather upon the quality and nature of the activity in relation to the fair and orderly administration of the laws which it was the purpose of the due process clause to insure. \*\*\* [T]o the extent that a corporation exercises the privilege of conducting activities within a state, it enjoys the benefits and protection of the laws of that state. The exercise of that privilege may give rise to obligations, and, so far as those obligations arise out of or are connected with the activities within the state, a procedure which requires the corporation to respond to a suit brought to enforce them can, in most instances, hardly be said to be undue.''

326 U.S. 310, 319, 90 L. Ed. 95, 104, 66 S. Ct. 154, 160.

Our review of subsequent United States Supreme Court cases supports our determination that Ltd. is subject to the jurisdiction of Illinois courts. In *Keeton v. Hustler Magazine* (1984), 465 U.S. ____, 79 L. Ed. 2d 790, 104 S. Ct. 1473, a unanimous court ruled that New Hampshire could exercise *in personam* jurisdiction over a nonresident magazine publisher that had circulated his publication in New Hampshire. The court noted that New Hampshire was chosen as the forum State because New Hampshire's statute of limitations for libel provided a longer period of time than the statute of limitations of other States. Similarly, the court found no due process violation in *Calder v. Jones* (1984), 465 U.S. ____, 79 L. Ed. 2d 804, 104 S. Ct. 1482. In *Calder,* another unanimous court determined that a California court could exercise *in personam* jurisdiction over Florida journalists, even though the allegedly libelous article was written and published in Florida and the only contact with the forum State was the circulation of the article. Although these two cases deal with libel and not airplane crashes, we believe that the due process considerations in *Keeton* and *Calder* support our determination in the case at bar.

Business contacts must be of a continuous and systematic nature to invoke the jurisdiction of State courts. In *Helicopteros Nacionales de Columbia v. Hall* (1984), 466 U.S. ____, 80 L. Ed. 2d 404, 104 S. Ct. 1868, the United States Supreme Court held that a nonresident Columbian corporation was not subject to *in personam* jurisdiction of the State courts of Texas. Helicopteros (Helicol) had entered into a contract to provide helicopter transportation in Peru for the Peruvian State oil company. Four American citizens were killed in a helicopter crash in Peru, and suit was brought in a Texas court. The court held that Helicol's contacts with Texas were insufficient to satisfy the require-

ments of the due process clause of the fourteenth amendment. The court noted:

> "Helicol never has been authorized to do business in Texas and never has had an agent for the service of process within the State. It never has performed helicopter operations in Texas or sold any product that reached Texas, never solicited business in Texas, never signed any contract in Texas, never had any employee based there, and never recruited an employee in Texas. In addition, Helicol never has owned real or personal property in Texas and never has maintained an office or establishment there." 466 U.S. ____, ____, 80 L. Ed. 2d 404, 409, 104 S. Ct. 1868, 1871.

We contrast this with the business contacts between Ltd. and the State of Illinois. Ltd. established a wholly owned subsidiary in Illinois to provide product support for the users of Ltd.'s products. Inc. has been operating in Illinois for 13 years, and these operations have been continuous and systematic. Inc. has been included in Ltd.'s American advertising, and has been an essential component of Ltd.'s business activities in Illinois. We believe that the case at bar, unlike *Helicopteros*, presents a pattern of continuous and systematic business activities, and these contacts are sufficient to invoke the jurisdiction of Illinois courts.

In Illinois, jurisdiction over nonresident corporations doing business in the State is based on the following statutory provision:

> "A private corporation may be served (1) by leaving a copy of the process with its registered agent or any officer or agent of said corporation found anywhere in the State; or (2) in any other manner now or hereafter permitted by law. A private corporation may also be notified by publication and mail in like manner and with like effect as individuals." Ill. Rev. Stat. 1981, ch. 110, par. 2–204.

A determination of whether a foreign corporation is do-

ing business in the State of Illinois turns on the facts unique to each case. (*Cf. Cook Associates, Inc. v. Lexington United Corp.* (1981), 87 Ill. 2d 190; *Connelly v. Uniroyal, Inc.* (1979), 75 Ill. 2d 393.) We have been unable to fashion a precise test or talismanic phrase to guide us in this task. (See Waits, *Values, Intuitions and Opinion Writing: The Judicial Process and State Court Jurisdiction,* 1983 U. Ill. L. Rev. 917.) Justice Cardozo defined the term "doing business" for jurisdictional purposes as the corporation operating within the State "not occasionally or casually, but with a fair measure of permanence and continuity." *Tauza v. Susquehanna Coal Co.* (1917), 220 N.Y. 259, 267, 115 N.E. 915, 917.

Early decisions of this court required that a corporation have agents or physical offices in this State, and that these agents do more than mere solicitation of business. (*Booz v. Texas & Pacific R.R. Co.* (1911), 250 Ill. 376; see also Eaton, *Illinois Replaces "Profit" for "Presence" in Determining Long-Arm Jurisdiction Over Foreign Corporations,* 69 Ill. B.J. 676, 678 (1981).) Technological change and a more sophisticated national economy mandated a departure from the restrictive rule in *Booz,* and this step was taken in *Braband v. Beech Aircraft Corp.* (1978), 72 Ill. 2d 548. In *Braband,* plaintiffs' decedents were killed while aboard an aircraft that crashed in Frobisher Bay, Northwest Territories, Canada. Beech Aircraft Corporation was a Delaware corporation with its principal place of business in Kansas. The defective airplane had been manufactured in Kansas, but Beech had an agreement with Hartzog Aviation, Inc., an Illinois corporation, to market Beech's products within Illinois. This court held that Beech was "doing business" in Illinois even though the activities of Hartzog Aviation were not related to the subject matter of the litigation. The *Braband* court declined to decide the question of whether Hartzog's activities alone would subject Beech to the jurisdiction of Illinois courts but based the decision

on the business activities of Beech. The court noted:

"In view of defendant's activities within Illinois designed to effect sales to residents of Illinois, defendant could reasonably assume that airplanes which it manufactured would be owned by residents of Illinois and in view of the high degree of mobility peculiar to its products could further assume that they would be flown both within Illinois and into other States, or as in this instance, to other countries. We hold, therefore, that *** defendant's activities showed sufficient contacts with this State so that requiring it to defend this action does not offend 'traditional notions of fair play and substantial justice.' " 72 Ill. 2d 548, 559.

In the case at bar, we believe that Ltd. had sufficient contacts with Illinois to invoke the jurisdiction of Illinois courts. The record demonstrates that Inc. was a wholly owned subsidiary of Ltd., and that Inc. operated in Rosemont, Illinois, as a supply depot for Ltd. products for the entire United States. Clearly Ltd., through Inc., was doing business in Illinois.

Defendant urges us to follow the decision in *People ex rel. Compagnie Nationale Air France v. Giliberto* (1978), 74 Ill. 2d 90, where this court held that the circuit court of Cook County could not entertain an action arising out of the events surrounding the Israeli rescue of a terrorist-held plane at Entebbe Airport in Uganda. We find *Air France* distinguishable because it involved a determination of lack of jurisdiction over Air France because of the Warsaw Convention governing international air transportation (74 Ill. 2d 90, 108) and a related determination that *forum non conveniens* principles precluded the exercise of jurisdiction over Singapore Airlines (74 Ill. 2d 90, 108-16). *Air France* did not squarely involve the "doing business" test for jurisdiction over a nonresident corporation. The case at bar is not comparable.

Defendant argues that *Cannon Manufacturing Co. v. Cudahy Packing Co.* (1925), 267 U.S. 333, 69 L. Ed. 634,

45 S. Ct. 250, warrants a reversal of the appellate court's holding. In *Cannon*, the United States Supreme Court held that the activities of a subsidiary corporation did not automatically subject the parent corporation to the jurisdiction of the State court where the subsidiary was domiciled. Although *Cannon* has not been expressly overruled, its vitality has been limited by the subsequent decisions in *International Shoe* and its progeny. (See Comment, *A New Footnote in Erie v. Tompkins: "Cannon is Overruled,"* 36 N.C. L. Rev. 181 (1958); see generally Wellborn, *Subsidiary Corporations in New York: When Mere Ownership is Enough to Establish Jurisdiction Over the Parent*, 22 Buffalo L. Rev. 681 (1973).) Many commentators have noted that the *Cannon* opinion is no longer followed in an era when the United States Supreme Court focuses on "contacts" rather than "physical presence" in determining the scope of State court jurisdiction over nonresident defendants. (See Kurland, *The Supreme Court, the Due Process Clause, and the In Personam Jurisdiction of State Courts From Pennoyer to Denckla: A Review*, 25 U. Chi. L. Rev. 569 (1958); see generally Brilmayer, *How Contacts Count: Due Process Limitations on State Court Jurisdiction*, 1980 S. Ct. Rev. 77.) Even an expansive reading of *Cannon* does not justify the conclusion that a parent corporation can never be subject to the jurisdiction of a State where a subsidiary is located. We conclude that *Cannon* does not prevent the State of Illinois from exercising jurisdiction over Ltd.

Ltd.'s contention that service of process on Inc. was not effective is without merit. We believe that Inc. was an agent of Ltd. for service of process, and that Ltd. was fully apprised of the pendency of the suit by the delivery of a copy of the complaints and summons at Inc.'s office in Rosemont. *Davis v. Dresback* (1876), 81 Ill. 393.

We next consider Ltd.'s argument that Illinois cannot exercise jurisdiction over Ltd. because none of the plain-

tiffs had any contact with Illinois. We believe the crucial question is whether due process prevents the plaintiffs from suing Ltd. in Illinois, not whether any of the plaintiffs are domiciled here. The nature of air-crash litigation frequently produces an exotic cast of characters, and there is often no ideal place to try the case. (See Simpson, *Recent Trends in International Aviation Accident Litigation-A Practical View*, 5 Annals Air & Space Law 189 (1980); 2 J. Kennelly, Litigation and Trial of Air Crash Cases ch. 4.) Ltd.'s argument that the case should be tried in Zambia or Canada is misdirected. This appeal is based on the question of jurisdiction, not *forum non conveniens*. Although many of the occurrence witnesses reside in Africa, and although it may be more convenient for Ltd. to defend this lawsuit in Canada because its main offices are located there, that cannot affect our determination of the extent of jurisdiction of Illinois courts. If Ltd. cannot be sued in Illinois, it follows that Ltd. cannot be sued anywhere in the United States under the theory of "doing business," since Inc. is the only subsidiary of Ltd. in the United States. We believe that a corporation that has established a supply depot in Illinois to support an enterprise that has sold 885 airplanes in the United States and logged millions of passenger miles should be subject to the jurisdiction of Illinois courts.

Since we have determined that Ltd. was doing business in Illinois, we need not address the alternative theory of whether Inc. was the *alter ego* of Ltd. We therefore conclude that Ltd. was doing business in Illinois and that Illinois courts have jurisdiction over this cause of action. The judgment of the appellate court is affirmed, and the cause is remanded to the circuit court for proceedings consistent with the views expressed in this opinion.

*Affirmed and remanded.*

JUSTICE SIMON, specially concurring:

I concur in the court's conclusion that Illinois has jurisdiction over this case, but not for the reason given, namely that the Canadian corporation is doing business in Illinois merely because it has a subsidiary corporation here. Rather, I would hold that Inc. is an *alter ego* of Ltd.

The record shows that Inc. exists for the sole purpose of selling Ltd.'s products within the United States, that Ltd. provides Inc. with inventory for which Inc. is permitted to pay out of receipts on the sales of that inventory, and that Ltd. owns all of Inc.'s stock. Inc. is overseen, not by a board of directors of its own, but by Ltd.'s board of directors, all Canadians, and two of whose members also serve as president and vice-president of both Ltd. and Inc. In addition, the position of "resident director and manager" of Inc. ranks on Inc.'s official organizational chart with its "service manager" and "spare parts manager" and two levels below its executive officers, both of whom are directors and officers of Ltd. The officers of Inc. are paid by Ltd., as are expenses for business trips on behalf of Inc. Finally, in addition to the substantial name identity between "De Havilland Aircraft of Canada, Ltd." and "De Havilland Canada, Inc.," Inc. is described in Ltd.'s Illustrated Parts Catalogue as one of three "De Havilland Canada Products Support Depot[s]."

In short, Inc. exhibits few of the independent characteristics of a subsidiary company but behaves functionally as a branch of Ltd. and holds itself out to the public to be so. Under these circumstances Inc. is properly viewed as an instrumentality or *alter ego* of Ltd., and Illinois has general jurisdiction over Ltd. based on Inc.'s activities here. See *Leach Co. v. General Sani-Can Manufacturing Corp.* (7th Cir. 1968), 393 F.2d 183; *Boryk v. deHavilland Aircraft Co.* (2d Cir. 1965), 341 F.2d 666; *Top Form Mills, Inc. v. Sociedad Nationale Industria Applicazioni Viscosa*

(S.D.N.Y. 1977), 428 F. Supp. 1237; *Captain International Industries, Inc. v. The Westbury, Chicago, Inc.* (N.D. Ill. 1975), 416 F. Supp. 721; *Tokyo Boeki (U.S.A.), Inc. v. SS Navarino* (S.D.N.Y. 1971), 324 F. Supp. 361.