812 N.E.2d 704 (2004)
351 Ill.App.3d 112
285 Ill.Dec. 884
Matthew HAUBNER, Personal Representative for the Estate of Robert Haubner, Deceased, and Noralee Dawn Rockwell, Executor of the Estate of Susan Miller, Deceased, Plaintiffs-Appellants,
v.
ABERCROMBIE & KENT INTERNATIONAL, INC., Abercrombie & Kent Overseas, Ltd., Abercrombie & Kent Travel, Inc., Abercrombie & Kent Ltd. (Uganda), d/b/a A & K Uganda, Abercrombie & Kent Travel, Ltd., d/b/a A & K Travel Kenya, and Abercrombie & Kent Group Holdings SA (Luxembourg), Defendants-Appellees.
No. 1-03-2219.
Appellate Court of Illinois, First District, Third Division.
June 30, 2004.
*706 Corboy & Demetrio, P.C., Chicago (Phillip H. Corboy & Edward G. Willer, of counsel); Pickett Dummigan Rhodes LLP, Portland, Oregon (J. Randolph Pickett & Laura L. Rhodes, of counsel), for Appellants.
Clausen Miller P.C., Chicago (Edward M. Kay & Agelo L. Reppas, of counsel), for Appellees.
Presiding Justice HOFFMAN delivered the opinion of the court:
The Plaintiffs, Matthew Haubner, personal representative for the estate of Robert Haubner, deceased, and Noralee Dawn Rockwell, executor of the estate of Susan Miller, deceased, appeal from an order of the circuit court granting a motion to quash service for lack of in personam jurisdiction in favor of the defendants, Abercrombie & Kent Ltd. (Uganda) d/b/a A & K Uganda (hereinafter "A & K Uganda"), Abercrombie & Kent Travel, Ltd., *707 d/b/a A & K Travel Kenya (hereinafter "A & K Kenya") and Abercrombie & Kent Group Holdings SA (Luxembourg) (hereinafter "A & K Luxembourg") (collectively "the foreign A & K defendants"). On appeal, the plaintiffs contend that the circuit court erred in failing to assert in personam jurisdiction over the foreign A & K defendants under sections 2-209(a)(1) and (b)(4) of the Code of Civil Procedure (the Code). 735 ILCS 5/2-209(a)(1) and (b)(4) (West 2000). For the reasons which follow, we affirm in part, reverse in part and remand for further proceedings.
On March 1, 1999, Haubner and Rockwell were abducted from their tent and murdered by suspected Interahamwe rebels while vacationing at the Gorilla Forest Camp in the Bwindi Impenetrable Forest National Park, Uganda. Probate proceedings were initiated in respect to both decedents in the circuit court of Multnomah County, Oregon.
The case at bar was initiated on May 11, 2000, as a wrongful death and survival action in the circuit court of Cook County against Abercrombie & Kent International, Inc. (hereinafter "A & K Int'l"), Abercrombie & Kent Overseas, Ltd. (hereinafter "A & K Overseas") and Abercrombie & Kent Travel, Inc. (hereinafter "A & K Travel") (collectively "the Illinois A & K defendants"). The complaint alleged that the Illinois A & K defendants owned and operated the Gorilla Forest Camp where the decedents were lodging. The complaint further alleged that the Illinois A & K defendants were negligent in failing to warn the decedents about various acts of civil unrest and armed violence occurring along the Ugandan border and in failing to provide adequate security at the Gorilla Forest Camp.
On July 14, 2000, the Illinois A & K defendants filed a motion to transfer the cause to Du Page County on grounds of lack of venue and forum non conveniens. The motion to transfer contained an affidavit from Alistair Ballantine, the chairman of A & K Int'l., which averred that each of the Illinois A & K defendants' offices and sole places of business were in Oak Brook, Du Page County, Illinois.
On February 23, 2001, the plaintiffs were granted leave to amend their complaint to add the foreign A & K defendants. The complaint collectively referred to both the foreign and Illinois A & K defendants as "A & K." Similar to the initial complaint, the amended complaint alleged that "A & K" was an Illinois corporation which owned and operated the Gorilla Forest Camp, and that "A & K" negligently failed to warn and protect the decedents.
On February 22, 2002, A & K Luxembourg filed a request to admit and a notice of removal of the cause to the United States District Court for the Northern District of Illinois based on the doctrine of fraudulent joinder. The request to admit, which was filed before the notice of removal, asked the plaintiffs to admit that the amount in controversy did not exceed $75,000. On June 6, 2002, the district court remanded the matter back to the circuit court over the objection of the Illinois and foreign A & K defendants.
On August 23, 2002, the foreign A & K defendants filed a motion to quash service of the amended complaint and summons, arguing that the circuit court lacked in personam jurisdiction. Attached to the motion were affidavits from corporate officers of A & K Luxembourg, A & K Uganda and Abercrombie & Kent Ltd., (Nairobi) (hereinafter "A & K Nairobi"). Sabine Perrier, of A & K Luxembourg, averred that A & K Luxembourg was a corporation organized under the laws of the Grand Duchy of Luxembourg with its principal place of business and sole office in Luxembourg. *708 A & K Luxembourg operated as a holding company and in that capacity owned an unspecified number of shares of the Illinois A & K defendants. A & K Luxembourg also shared one common director with A & K Int'l and A & K Travel.
Peter Ngori, the managing director of A & K Nairobi, averred the following. A & K Nairobi, whose principal place of business and sole office was located in Kenya, was a retail tour operator and was primarily owned by A & K Luxembourg. A & K Nairobi was the majority shareholder of the entity known as A & K Kenya before the sale and dissolution of the later in June 1999. A & K Nairobi was incorrectly served with the amended complaint under the name A & K Kenya, and was submitting Ngori's affidavit in support of the foreign A & K defendants' motion to quash. A & K Kenya had operated as a retail travel agency with its sole place of business in Kenya. In July 1998, an independent African safari guide had contacted A & K Kenya for assistance in securing certain permits and arrangements for the decedents' trip. A & K Kenya subsequently worked with A & K Uganda to obtain the requested permits and accommodations for the decedents' vacation into the Bwindi Impenetrable Forest National Park and their lodging at the Gorilla Forest Camp.
Patrick Shah, the general manager of A & K Uganda, averred that A & K Uganda's principal place of business and sole office was located in Uganda, where the corporation organized and arranged various safaris and tours, and that A & K Luxembourg held a majority ownership interest in A & K Uganda. Employees of A & K Uganda would occasionally communicate with A & K Int'l via e-mail or telephone regarding safaris and tours organized by the two corporations and, in March 1998, Shah personally visited the offices of A & K Int'l in Illinois. Shah further averred that A & K Uganda had worked with A & K Kenya to arrange certain aspects of the decedents' travel arrangements within Africa.
Following the circuit court's allowance of limited discovery pursuant to Supreme Court Rule 201(l) (Official Reports Advance Sheet No. 8 (May 17, 2002), R. 201(l), eff. July 1, 2002), the plaintiffs served interrogatories upon the foreign A & K defendants. A & K Nairobi answered the interrogatories addressed to A & K Kenya, under objection, and only on behalf of A & K Nairobi. The answers revealed, inter alia, that A & K Uganda and A & K Nairobi derived 30% and 35%, respectively, of their business from the Illinois A & K defendants. A & K Luxembourg also answered that its board members communicated with the board members of both A & K Int'l and A & K Travel in A & K Luxembourg's capacity as a holding company.
On February 28, 2003, the plaintiffs responded to the foreign A & K defendants' motion to quash, arguing that jurisdiction was proper under sections 2-209(a)(1) and (b)(4) of the Code. 735 ILCS 5/2-209(a)(1) and (b)(4) (West 2000). Attached to their response, the plaintiffs provided several affidavits and "A & K" marketing or promotional materials. An affidavit from Robert McLaurin, which was originally submitted to the district court in support of the plaintiffs' motion to remand, averred that he and his wife were friends of the decedents and had accompanied them on the trip to the Gorilla Forest Camp. McLaurin stated that once he returned from Africa he had a conversation with Ballantine, who agreed to refund $4,765 to McLaurin on behalf of "A & K." Another document attached to the response, authored by Ballantine, stated that the refund provided to McLaurin by A & K Int'l *709 "was merely to facilitate the refund given to Mr. McLaurin from A & K Uganda."
The marketing and promotional materials attached to the plaintiffs' response mainly consisted of several print copies of pages from the "Abercrombie & Kent" (A & K) website. One page traced the history of A & K from its beginnings as a small specialized travel firm based in Kenya, to its expansion "beyond the African continent" with offices in London and Oak Brook, Illinois, and its evolution into "a highly specialized, international, integrated group of companies." Another A & K web page contained a press release dated September 7, 1999. The press release, which originated from Oak Brook, Illinois, extolled A & K's naming as the world's best safari outfitter of 1999 before stating that, "The U.S. headquarters for Abercrombie & Kent International, Inc. is located in Oak Brook, Illinois."
Following a hearing, the circuit court granted the foreign A & K defendants' motion to quash and dismissed the foreign A & K defendants for lack of in personam jurisdiction. The circuit court subsequently granted the foreign A & K defendants' motion to make the circuit court's order final and appealable pursuant to Supreme Court Rule 304(a) (155 Ill.2d R. 304(a)), and this timely appeal follows.
Initially, we address the foreign A & K defendants' motion to strike the plaintiffs' brief and dismiss this appeal for failure to provide an adequate statement of facts in violation of Supreme Court Rule 341(e)(6) (Official Reports Advance Sheet No. 21 (Oct. 17, 2001), R. 341(e)(6), eff. Oct. 1, 2001). While the plaintiffs' relatively short statement of facts may not have set forth every relevant fact in great detail, our review of the record shows that any error is not so egregious as to warrant granting the motion. Therefore, the foreign A & K defendants' motion to strike the plaintiffs' brief and dismiss this appeal is denied.
An Illinois court can assert in personam jurisdiction over a non-resident defendant pursuant to section 2-209 of the Code if the defendant is, inter alia, transacting business in Illinois (735 ILCS 5/2-209(a)(1) (West 2000)) or "doing business" in Illinois (735 ILCS 5/2-209(b)(4) (West 2000)). The burden rests with the plaintiff to establish a prima facie basis for exercising in personam jurisdiction over a non-resident defendant. Spartan Motors, Inc. v. Lube Power, Inc., 337 Ill.App.3d 556, 559, 272 Ill.Dec. 74, 786 N.E.2d 613 (2003). A plaintiff's prima facie case may be overcome by uncontradicted evidence by the defendant which defeats jurisdiction. Alderson v. Southern Co., 321 Ill.App.3d 832, 846, 254 Ill.Dec. 514, 747 N.E.2d 926 (2001). Where the circuit court's determination of jurisdiction is based solely upon documentary evidence our standard of review is de novo. Alderson, 321 Ill.App.3d at 846, 254 Ill.Dec. 514, 747 N.E.2d 926.
Our discussion begins with A & K Luxembourg and a finding that A & K Luxembourg waived any objection to the circuit court's jurisdiction. An Illinois court obtains personal jurisdiction over a defendant once service is effectuated or when the defendant enters a general appearance. Clay v. Huntley, 338 Ill.App.3d 68, 76, 272 Ill.Dec. 502, 787 N.E.2d 317 (2003). Any action taken by a defendant which recognizes the cause of action as being in court constitutes a general appearance unless the action is taken for the sole purpose of objecting to the court's jurisdiction over the defendant's person. Clay, 338 Ill.App.3d at 76, 272 Ill.Dec. 502, 787 N.E.2d 317. An exception to the general appearance rule is provided by Rule 201(l), which allows a defendant to conduct limited discovery regarding the issue of personal jurisdiction without submitting *710 to the general jurisdiction of the court or waiving any objection thereto. Official Reports Advance Sheet No. 8 (May 17, 2002), R. 201(l), eff. July 1, 2002. However, a defendant's discovery must be limited to the issue of the court's jurisdiction over the person of the defendant, for the engagement of discovery not limited to the issue of the court's in personam jurisdiction constitutes a general appearance and a waiver of any jurisdictional objection. Pearson v. Lake Forest Country Day School, 262 Ill.App.3d 228, 233-34, 199 Ill. Dec. 324, 633 N.E.2d 1315 (1994).
Here, the record shows that A & K Luxembourg served a request to admit upon the plaintiffs. The request to admit dealt with the amount in controversy and, while potentially bearing on the issue of the district court's subject matter jurisdiction, it had no relation to the circuit court's in personam jurisdiction. As such, the request to admit did not fall under Rule 201(l) and, therefore, constituted a general appearance and a waiver of any objection to the circuit court's in personam jurisdiction that A & K Luxembourg may have had. Further, we note that, at the time the request to admit was filed, the circuit court still retained jurisdiction over the cause as A & K Luxembourg had not yet filed its notice of removal with the clerk of the circuit court. See 28 U.S.C.A. § 1446(d); and Georgia v. Rachel, 384 U.S. 780, 797 n. 27, 86 S.Ct. 1783, 16 L.Ed.2d 925 (1966); Zeglis v. Sutton, 980 F.Supp. 958, 961 (N.D.Ill.1997); Eastern v. Canty, 75 Ill.2d 566, 571, 27 Ill.Dec. 752, 389 N.E.2d 1160 (1979) (all stating that every requirement of the federal removal statute, including the filing of the notice of removal with the clerk of the state court, must be satisfied before a district court gains exclusive jurisdiction over a matter). Therefore, by filing a request to admit before the circuit court was divested of jurisdiction over the cause, A & K Luxembourg submitted to the jurisdiction of the circuit court and waived any objection to the court's in personam jurisdiction.
As for A & K Uganda and A & K Kenya, the plaintiffs first argue that jurisdiction is proper under section 2-209(a)(1) of the Code. 735 ILCS 5/2-209(a)(1) (West 2000). We disagree. Jurisdiction predicated upon this section is only proper where a defendant commits one of the enumerated acts described in subsection (a), and where the cause of action arises directly from the commission of the enumerated act. See 735 ILCS 5/2-209(a)(1) through (14) (West 2000); Forrester v. Seven Seventeen HB St. Louis, 336 Ill. App.3d 572, 577, 271 Ill.Dec. 280, 784 N.E.2d 834 (2002); Alderson, 321 Ill. App.3d at 847, 254 Ill.Dec. 514, 747 N.E.2d 926. In the case at bar, the plaintiffs' cause of action does not arise from any of A & K Uganda or A & K Kenya's transactions in Illinois. Instead, the plaintiffs are asserting wrongful death and survival actions that arose from actions which took place in Uganda, Kenya, and possibly the decedents' purported home state of Oregon. Accordingly, based upon the facts of this case, in personam jurisdiction over A & K Uganda and A & K Kenya is improper under section 2-209(a)(1). See Gaidar v. Tippecanoe Distribution Service, Inc., 299 Ill.App.3d 1034, 234 Ill.Dec. 150, 702 N.E.2d 316 (1998) (section 2-209(a)(1) held inapplicable where the plaintiff's cause of action arose from vehicular accident with non-resident defendant outside of Illinois).
In addition to the transaction of business under section 2-209(a)(1), Illinois courts may exercise in personam jurisdiction over non-resident corporate defendants who are "doing business" in Illinois. 735 ILCS 5/2-209(b)(4) (West 2000); Forrester, 336 Ill.App.3d at 579, 271 Ill.Dec. 280, 784 N.E.2d 834. There is no precise *711 test for determining whether a foreign corporation is "doing business" in Illinois. Kadala v. Cunard Lines, Ltd., 226 Ill. App.3d 302, 314, 168 Ill.Dec. 402, 589 N.E.2d 802 (1992). Rather, a court must perform a case-by-case analysis to determine if a corporation is conducting business of such character and extent as to warrant the inference that the corporation has subjected itself to the jurisdiction and laws of the forum state. Alderson, 321 Ill.App.3d at 848-49, 254 Ill.Dec. 514, 747 N.E.2d 926, citing Cook Associates, Inc. v. Lexington United Corp., 87 Ill.2d 190, 201, 57 Ill.Dec. 730, 429 N.E.2d 847 (1981). The corporation must transact its business within the state "not occasionally or casually, but with a fair measure of permanence and continuity." Cook Associates, Inc., 87 Ill.2d at 203, 57 Ill.Dec. 730, 429 N.E.2d 847, quoting Tauza v. Susquehanna Coal Co., 220 N.Y. 259, 115 N.E. 915, 917 (1917). The "doing business" standard is quite high but, once satisfied, a corporation is considered a resident of Illinois and may be sued on any cause of action, regardless of whether it arose out of the corporation's contacts with the state. Alderson, 321 Ill.App.3d at 849, 254 Ill.Dec. 514, 747 N.E.2d 926.
Our "doing business" analysis begins with an examination of A & K Uganda. The undisputed facts show that A & K Uganda was a tour operator based in Uganda which organized and arranged various travel services. As part of its course of business, employees from A & K Uganda communicated with employees from A & K Int'l regarding various tours and excursions offered by both corporations in Africa. The general manager of A & K Uganda also visited the offices of A & K Int'l on one occasion. Further, A & K Uganda derived 30% of its revenue from business it conducted with A & K Int'l in Illinois, and A & K Int'l issued a refund to one individual on behalf of A & K Uganda. We find that these facts, when viewed as a whole, demonstrate that A & K Uganda was "doing business" in Illinois.
We believe this finding is in line with our previous decision in Gaidar, 299 Ill. App.3d 1034, 234 Ill.Dec. 150, 702 N.E.2d 316. In Gaidar, the plaintiff brought a negligence action in an Illinois court following an automobile accident in Indiana with a truck driven by an Indiana resident and owned by an Indiana trucking corporation. The facts showed that the defendant corporation conducted a majority of its business in the Midwest, with less than 2% of its monthly trucking business originating or terminating in Illinois and less than 10% of its total monthly mileage driven in Illinois. The frequency of the defendant corporation's business contacts with Illinois were further described as "fewer than 30 times a year" in relation to one Illinois client, and "from time to time" with several other Illinois clients. Further, the defendant corporation did not directly advertise in Illinois, but rather belonged to several associations that had directories listing its name. Nevertheless, we held in Gaidar that the plaintiff proved a prima facie case of in personam jurisdiction based on section 2-209(b)(4) of the Code. In so holding, we declared:
"[The defendant corporation's] contacts with Illinois may not have been numerous, but its contacts were not random, fortuitous, or attenuated. The relatively small percentage of trips made to Illinois is not determinative; it is whether business in Illinois was fairly regular. [Citation.] [The defendant corporation's] business in Illinois was sufficiently regular to satisfy section 2-209(b)(4). [Citation.]
* * *
* * * The evidence that [the defendant corporation] did not have an office *712 in Illinois, * * * did not advertise for business in Illinois, * * * that less than 2% of shipments were for Illinois customers, that about 10% of the total miles were driven in Illinois, and that [the defendant corporation] did not have any "big" customers in Illinois was not sufficient to overcome the prima facie case of jurisdiction. We conclude that [the defendant corporation] was doing sufficient business in Illinois to subject it to jurisdiction to Illinois courts under [section 2-209(b)(4)] * * *." Gaidar, 299 Ill.App.3d at 1043-44, 234 Ill.Dec. 150, 702 N.E.2d 316.
Here, we find that, similar to the defendant corporation in Gaidar, A & K Uganda's contacts with Illinois were not random, fortuitous or attenuated and that its business in Illinois was sufficiently permanent and continuous to satisfy section 2-209(b)(4). Just as the lack of a corporate office or direct advertising in Illinois were insufficient factors to defeat jurisdiction in Gaidar, they fail to establish that A & K Uganda was not "doing business" in Illinois. Moreover, while the defendant corporation in Gaidar derived a small percentage of its business from Illinois and could not be said to have a "big" client in Illinois, the opposite is true here: A & K Uganda derived a substantial amount of its revenue from A & K Int'l.
Further, the record positively rebuts the foreign A & K defendants' assertion that A & K Uganda did not advertise or promote their products in Illinois. Employees of A & K Uganda communicated with employees of A & K Int'l, both through electronic means and in person, in relation to their sole business purpose of selling safari tours. This promoting and marketing with A & K Int'l clearly bore fruit, as 30% of A & K Uganda's revenue originated from sales of its products through A & K Int'l. Moreover, the marketing and promotional materials the plaintiffs submitted to the circuit court show a common marketing approach by the "A & K Group of Companies" meant to promote and benefit each branch of the A & K family.
Finally, although the foreign A & K defendants are correct that even substantial revenues from sales in non-product liability cases are insufficient to satisfy the "doing business" standard (see Rokeby-Johnson v. Derek Bryant Insurance Brokers, Ltd., 230 Ill.App.3d 308, 319, 171 Ill.Dec. 670, 594 N.E.2d 1190 (1992)), this argument fails to recognize that a determination of whether a court possesses in personam jurisdiction is made on a case-by-case basis after examining all of the relevant circumstances. Alderson, 321 Ill. App.3d at 849, 254 Ill.Dec. 514, 747 N.E.2d 926. Here, as discussed above, in addition to the continued and substantial revenues generated from the sale of its products in Illinois, A & K Uganda's direct relationship with A & K Int'l and its implicit marketing and promotion in this state demonstrates that A & K Uganda's activities in Illinois were regular, continuous and systematic such that it was "doing business" in Illinois. In a manner similar to the Gaidar court, we find here that A & K Uganda was conducting its business in Illinois with such a measure of permanence and continuity to warrant the inference that it has subjected itself to the jurisdiction and laws of Illinois pursuant to section 2-209(b)(4) of the Code.
While we find that the evidence affirmatively shows that A & K Uganda was "doing business" in Illinois, we cannot find from the evidence presented that A & K Kenya was likewise "doing business." From the information provided by A & K Nairobi, it was shown that A & K Kenya, in connection with A & K Uganda, participated in the capacity of a travel agent in certain aspects of the decedents' trip. Contrary *713 to numerous claims by both parties on appeal, however, the evidence does not show that A & K Kenya derived any of its business from A & K Int'l or communicated on any occasion with any Illinois entity. It is A & K Nairobi, who is not a party to this matter, which derived 35% of its business from and occasionally communicated with A & K Int'l. Accordingly, based on the lack of evidence concerning A & K Kenya's contacts with Illinois, we find that the plaintiffs have failed to sufficiently support a conclusion that A & K Kenya was conducting business in Illinois with any measure of permanence and continuity to warrant a finding that it was "doing business" in this state.
Finally, we note that in personam jurisdiction may also be asserted over A & K Luxembourg pursuant to Maunder v. DeHavilland Aircraft of Canada, Ltd., 102 Ill.2d 342, 80 Ill.Dec. 765, 466 N.E.2d 217 (1984). According to Maunder, it is appropriate to assert jurisdiction over a parent corporation if a subsidiary corporation is acting as the parent corporation's Illinois agent in the sense of conducting the parent's business rather than its own. Maunder relies on the fact that parents of wholly owned subsidiaries necessarily control, direct, and supervise subsidiaries to some extent. Alderson, 321 Ill.App.3d at 854, 254 Ill.Dec. 514, 747 N.E.2d 926. An Illinois court may not assert in personam jurisdiction over a parent company, however, if the subsidiary is conducting its own business. Alderson, 321 Ill.App.3d at 854, 254 Ill.Dec. 514, 747 N.E.2d 926.
Here, the evidence shows that A & K Luxembourg existed as a holding company doing business through its subsidiaries such as A & K Uganda and the Illinois A & K defendants. There is no evidence that A & K Luxembourg existed for any other purpose. Viewing the evidence as a whole, we believe that A & K Uganda and the Illinois A & K defendants were mere conduits through which A & K Luxembourg did business. See Alderson, 321 Ill.App.3d at 855, 254 Ill.Dec. 514, 747 N.E.2d 926 (finding that a holding company which existed for no other purpose than to control, direct and supervise subsidiaries was subject to in personam jurisdiction under Maunder). As we stated in Alderson, the application of Maunder to a holding company under facts such as these is consistent with Maunder's underlying principle that a corporation should not be allowed to shield itself from the jurisdiction of a state in which it does business by the simple act of separately incorporating its sales force or other operations within that state. Alderson, 321 Ill.App.3d at 855, 254 Ill.Dec. 514, 747 N.E.2d 926, quoting IDS Life Insurance Co. v. SunAmerica Life Insurance Co., 136 F.3d 537, 541 (7th Cir.1998).
For the foregoing reasons, we affirm the circuit court's finding that it lacked in personam jurisdiction over A & K Kenya, reverse its jurisdictional findings in relation to A & K Luxembourg and A & K Uganda, and remand this cause for further proceedings.
Affirmed in part, reversed in part, and remanded.
SOUTH and KARNEZIS, JJ., concur.