**FOSSETT CORPORATION and Irwin Z. Zandman, Individually and on behalf of all others similarly situated, Plaintiffs,**

v.

**Marvin GEARHART, Thomas H. Law, Bob R. Dorsey, Henry Zenzie, Peter T. Flawn, and Terence E. McClary, Defendants.**

No. 88 C 3728.

United States District Court, N.D. Illinois, E.D.

Sept. 19, 1988.

Lowell E. Sachnoff, Steven H. Cohen, Joel N. Shapiro, Sachnoff, Weaver & Rubenstein, Ltd., Chicago, Ill., for plaintiffs.

Thomas P. Sullivan, Ronald L. Marmer, Howard S. Suskin, Jenner & Block, Chicago, Ill., Robert S. Travis, Stephen L. Tatum, Cantey & Hanger, Fort Worth, Tex., for defendants.

### MEMORANDUM OPINION

BRIAN BARNETT DUFF, District Judge.

In 1984 Smith International, Inc. attempted to take over Gearhart Industries, Inc. ("GI"), a Fort Worth, Texas company. According to Fossett Corporation and Irwin Zandman, the plaintiffs in the action before this court, the directors of GI responded to Smith's attempt by entrenching themselves. Allegedly they did this by means of misrepresenting or failing to disclose material information in violation of federal securities laws. This supposedly caused

---

Fossett, Zandman, and many others to lose money on GI shares acquired in the midst of the Smith–GI contest.

Like many a disgruntled shareholder, Fossett filed a derivative suit in which it challenged the actions of GI's directors. Fossett filed this suit in March 1985 in the U.S. District Court for the Southern District of Texas. This suit eventually found its way into the 342d Judicial District Court of Tarrant County, Texas, where Judge Cunningham presides. GI meanwhile formed a special litigation committee to consider the merits of this suit, as well as other derivative suits stemming from its battle with Smith. The committee recommended that GI not prosecute the Fossett claims, and thus GI moved to dismiss Fossett's action.

Judge Cunningham acknowledged receipt of GI's recommendation and alerted the parties that he intended to accept it. This prompted Fossett and Zandman to file an amended petition, one putting forth class claims based on federal and Texas law. On April 2, 1988, Judge Cunningham struck the class claim; Fossett has since appealed the dismissal of its class and derivative claims to the Texas appellate courts.

Rebuffed by Judge Cunningham, Fossett and Zandman packed their bags full of class claims and came north. They refiled the class action in this court on April 24, 1988. GI's directors now ask this court to send the case back to Texas, this time to the U.S. District for the Northern District of Texas. They move under 28 U.S.C. § 1404(a) (1982), which states that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

Both sides agree that the class could have filed suit in the Northern District of Texas. They disagree as to whether Chicago or Fort Worth is the more convenient forum—actually, in the words of *Coffey v. Van Dorn Iron Works,* 796 F.2d 217, 219–220 (7th Cir.1986), whether Forth Worth "is clearly more convenient"—and as to where exactly the interest of justice lies in this dispute. While what is "convenient" or "just" often lies in the eye of the beholder, courts generally have reduced the analysis of venue questions to the balancing of four factors: the plaintiff's choice of forum, the convenience of the parties, the convenience of witnesses who are not parties, and the catch-all "interest of justice."

The factor that weighs greatest in favor of keeping this case here is the plaintiff's choice of forum. This choice is important, as one can tell from *Coffey*'s instruction that the transferee forum must be clearly more convenient. GI's directors argue that this court should give the plaintiffs' choice less weight in this case, since it is a class action. Fossett and Zandman rightly point out, however, that where a class's central allegations concern violations of the federal securities laws, the class's choice is entitled to full consideration. See, for example, *Beres v. Thomson McKinnon Securities, Inc.,* [1987 Transfer Binder] Fed.Sec.L. Rptr. (CCH) ¶ 93,395, 97,064 (S.D.N.Y.1987) [available on WESTLAW, 1987 WL 16977] (wide venue provisions of the Securities and Exchange Act of 1934, 15 U.S.C. §§ 78a *et seq.* (1982), indicate Congress's desire to allow class claims to proceed in any approved forum, regardless of the dispersion of the class).

Despite the strong presumption in favor of Fossett and Zandman's chosen forum, the other factors present in this case favor sending it to Texas. First, while Fossett and Zandman have substantial individual claims against the directors, they represent a class of shareholders. Who these shareholders are and where they live is unknown, and so it is difficult to say with precision which forum is closest to the bulk of them. What is known are the residences of all of GI's shareholders, and while many of these shareholders are not in the class—having purchased GI stock either before or after Smith's assault on the company—GI's directors have urged this court to use these residences as an indicator of the residences of the class. Fossett and Zandman have not come up with a better proxy, and so this court will take up the directors' suggestion.

According to the directors, only 4% of GI's stockholders live in Illinois. The bulk of the shareholders are Texas residents. From this the court concludes that Chicago is not necessarily more convenient for the class (its representatives aside). By contrast, of the six directors sued in this case, four live in Texas. Fossett and Zandman point out that two of these directors live 180 miles from Fort Worth, but that still leaves the majority of the directors closer to Fort Worth than to Chicago. Moreover, the testimony of the directors will be more important than that of Fossett and Zandman, since the securities claims in this case focus almost entirely upon the directors' acts.

On balance, it seems that Fort Worth is more convenient than Chicago for the parties. This is less important, however, than the convenience of non-party witnesses. See Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* 2d § 3851 (1986) (convenience of witnesses "[p]robably the most important factor"). Of the factors entering into this court's decision, this is the most difficult to assess. The parties agree that important witnesses live in California and New York. Regardless of this court's decision today, these witnesses will have to travel. Further, it appears from the briefs submitted to this court that no non-party witnesses live in Illinois. So Chicago may not be convenient for any non-party witness.

By contrast, there could be important non-party witnesses in Texas. Fossett and Zandman accuse the directors of packing their witness list to impress this court with the numbers of Texas residents the directors say they must call. This may be so. One of the problems with balancing convenience at such an early stage in the proceedings—particularly in light of the complex securities and breach of fiduciary duty claims posed here—is that the relative importance of certain witnesses is not within the ken of the Court. Fossett and Zandman may feel that the testimony of certain prospective defense witnesses may be minor or irrelevant, but the directors are entitled to present their side of the case any way they want, within reason. Regardless,

no important non-party witnesses appear to live in Chicago, and many might be living in Texas. That is enough for this court at this time to decide that Texas is the more convenient forum for non-party witnesses.

The last factor that enters into this court's decision is the interest of justice. As the Seventh Circuit noted in *Coffey*, the things considered under the rubric "the interest of justice" relate to the efficient administration of the court system. *Coffey*, 796 F.2d at 220–21. There are two items worthy of note in this regard, and each tips in the directors' favor. First, much of the litigation surrounding the Smith takeover attempt has occurred in Texas. While the parties dispute the extent to which the U.S. Court for the Northern District of Texas has dealt with the claims involved in this suit, it is undisputed that that court has had some experience with the matters involved in this litigation. Moreover, the discovery that remains in this case (Fossett and Zandman say that they have finished) will occur in Texas, and it would be convenient for a federal magistrate in Texas to supervise it.

Second, by Fossett and Zandman's own choosing, there are pendent state law claims in this suit. These claims are brought under the laws of Texas, and that weighs in favor of having a federal court sitting in Texas hear them. See *id.* at 221 (interest of justice includes having a federal judge familiar with a state's law hear claims brought under that law). Fossett and Zandman argue that, since they brought this suit in the Seventh Circuit, they are entitled to a court that is familiar with Seventh Circuit precedent. This argument rests on two propositions. The first is that, were this case to go to Fort Worth, Seventh Circuit law would go with it. The second is that it would be harder for a district court sitting in the Fifth Circuit to apply Seventh Circuit law than it would be for this court to apply Texas law.

This court doubts the validity of both propositions. Fossett and Zandman argue that the first proposition is the logical consequence of *Van Dusen v. Barrack*, 376 U.S. 612, 84 S.Ct. 805, 11 L.Ed. 945 (1964).

There the Court held that where a court has transferred a case brought under diversity jurisdiction, the transferee forum is "obligated to apply the state law that would have been applied if there had been no change of venue." *Id.* at 639, 84 S.Ct. 805. The Court derived this rule not only from the remedial purposes of § 1404(a), but also from the principles underlying our federal system.

As several courts and commentators have noted recently, the concerns expressed in *Van Dusen* do not resonate with quite the same force when one federal court transfers a case arising under federal law to another federal court. In a persuasive opinion, the District of Columbia Circuit ruled in *In re Korean Air Lines Disaster of Sept. 1, 1983*, 829 F.2d 1171 (D.C.Cir.1987), cert. granted, — U.S. —, 108 S.Ct. 1288, 99 L.Ed.2d 499 (1988) that *Van Dusen* is limited to choices of state law. As the court noted, application of the *Van Dusen* principle to issues of federal law would play havoc with the efforts of the Supreme Court and the Circuit Courts of Appeals to create a uniform body of federal law. It also conflicts with a federal judge's obligation to decide issues of federal law correctly, and not according to the interpretation of a court sitting in another circuit.

Of course, *Korean Air Lines* is the view of only the D.C. Circuit, this court, and a few commentators. (For insightful analysis of the problems with applying *Van Dusen* to federal law, see Richard L. Marcus, Conflict Among Circuits and Transfers Within the Federal Judicial System, 93 Yale L.J. 677 (1984).) Until the Supreme Court decides the isue, each circuit is entitled to express its own view on the subject. GI's directors seek to transfer this case to a district court sitting in the Fifth Circuit, and that circuit might choose to apply the *Van Dusen* principle to it.* This court thus must examine the second proposition:

would it be harder for the U.S. District Court for the Northern District of Texas to apply Seventh Circuit precedent than it would be for this court to apply Texas law? This court believes it would not. The Seventh Circuit has written with remarkable clarity about issues arising under the federal securities laws. This court has few doubts that the Northern District of Texas will find Seventh Circuit precedent easy to understand; this court is more concerned about its own ability to apply Texas law to the thorny issues that abound in this case.

In sum, Fossett and Zandman's choice of forum is entitled to great weight. Nevertheless, it would be more convenient for most of the parties and the non-party witnesses to move this case to Fort Worth. It would also be less costly and more efficient for this case to be there, even if the Northern District of Texas has to delve into Seventh Circuit precedents involving federal securities law. For these reasons, the defendants' motion to transfer this case to the Northern District of Texas is GRANTED.

---

* Fossett and Zandman argue that *Sargent v. Genesco, Inc.*, 492 F.2d 750, 758 (5th Cir.1974) states this very principle. This court disagrees. While *Sargent* involved a claim brought under the federal securities law, the *Sargent* court applied the *Van Dusen* principle only to a statute of limitations question. As the court clearly noted, state law provided the answer so it was correct for the court to apply *Van Dusen* to the problem. *Sargent* does not state the broader principle that Fossett and Zandman advance here.