**CAPITOL HARDWARE MANUFACTURING COMPANY, INC., a Delaware Corporation, Plaintiff,**

v.

**NATCO, INCORPORATED, a Florida Corporation; Schottenstein South, Inc., a Florida Corporation; Maurice Cohen and Natalie Cohen, Defendants.**

No. 88 C 8577.

United States District Court, N.D. Illinois, E.D.

Feb. 24, 1989.

Bedell A. Tippins, Jonathan G. Bunge, Kevin Tottis, Keck, Mahin & Cate, Chicago, Ill., for plaintiff.

J. Jonathan Regunberg, Nicholas Anaclerio, Jr., Theodore T. Schuld, B. Jay Yelton, Peterson, Ross, Schloerb & Seidel, Chicago, Ill., for defendants.

## MEMORANDUM OPINION

BRIAN BARNETT DUFF, District Judge.

The parties to this case are or once were in the business of encouraging displays.[1] Capitol Hardware Manufacturing Co., Inc.,

a Delaware corporation whose principal place of business is in Chicago, Illinois, manufactures and sells clothing display racks for clothing retailers. Sel–O–Rak International, Inc. was in the same business in Miami, Florida, part of which included a plating facility. In 1986 Capitol began negotiating with Sel–O–Rak's principal owners and officers, Maurice and Natalie Cohen, for the purchase of Sel–O–Rak. These negotiations involved (as negotiations do) several telephone and postal exchanges between Capitol in Illinois and the Cohens in Florida. On September 30, 1987, representatives of Capitol met in Chicago with the Cohens, along with attorneys for both sides. This meeting lasted over six hours, during which the parties discussed and negotiated an Asset Purchase Agreement and several pertinent schedules thereto.

At the end of the meeting, the Cohens signed the Agreement and departed Chicago. The Cohens signed this agreement on behalf of themselves and in their capacities as officers of Sel–O–Rak and Schottenstein South, Inc., another of the Cohens' companies. (This court will refer to those companies and Schottenstein South collectively as the "Sel–O–Rak group.") Included in the Agreement were representations and warranties from the Sel–O–Rak group that the tangible assets sold pursuant to the Agreement conformed to applicable laws, that Sel–O–Rak facilities complied with all pertinent environmental laws, that the Sel–O–Rak group had received all necessary environmental permits, and that the Sel–O–Rak plating facility was in good working order. The Agreement also provided that it should be construed under Illinois law. See Complaint, Ex. A §§ 6.9, 6.15, 6.17, 16.

After taking possession of the Sel–O–Rak properties, Capitol discovered disturbing things about them. Soil samples taken from the site of the plating facility allegedly revealed nickel and chromium contam-

---

1. The parties even have hired lawyers who know how to put on a good one. The court compliments both sides for their briefs on the present motions, as they waste little effort in getting to the heart of the issues. The court particularly applauds the defendants for abandoning losing arguments in their reply brief, and sticking only to those issues which were strongest in its favor.

ination in excess of legally acceptable limits. The facility also did not have the permits required by the Dade County Department of Environmental Resources Management ("DERM"). Capitol further discovered that in order to meet DERM and other agency regulations, it would have to modify the facility extensively. Needless to say, the facility allegedly has not been operating at its previous (promised) levels.

Capitol thus filed suit in this court. It charges breach of contract, asks for recission of the sale, and claims fraud in the negotiations leading to the contract. It sued the Cohens, Schottenstein South, and NATCO, Inc., the successor to Sel–O–Rak, under this court's diversity jurisdiction, 28 U.S.C. § 1332 (1982). Capitol then attempted to serve the defendants by registered mail, thinking that Rule 4(c)(2)(C)(ii), Fed.R. Civ.P., allows such service on persons not inhabiting or found within Illinois, the state of this forum. Maurice Cohen received the registered package but refused to acknowledge service of process. Capitol thus hired someone to serve the defendants personally. This effort paid off for Capitol, as the defendants are now present before this court.

■ Capitol wants to be compensated for its abortive effort to serve process on the defendants by mail. Capitol directs this court to Rule 4(c)(2)(D), which states:

> Unless good cause is shown for not doing so the court shall order the payment of the costs of personal service by the person served if such person does not complete and return within 20 days after mailing, the notice and acknowledgment of receipt of summons.

The defendants argue that this court has a good cause for not ordering payment of costs: the Federal Rules of Civil Procedure do not allow service of out-of-state defendants in the manner Capitol chose. Rule 4(e) provides that summons of persons not inhabiting or found within a state where the district court sits shall be according to the law of the state, unless federal law or federal rules permit otherwise. Illinois permits extraterritorial service, but not by registered mail alone. See Ill.Rev.Stat. ch. 110, ¶¶ 2–208, 2–209(e) (Smith–Hurd Ann. 1983 and 1988 supp.); *Chronister v. Sam Tanksley Trucking, Inc.,* 109 F.R.D. 1 (N.D.Ill.1983). This court holds that a party demonstrates good cause for not having costs of service assessed against it under rule 4(c)(2)(D) when the attempted service would have proved ineffectual.

The defendants now raise several objections, one to the jurisdiction of this court over their persons and one to the propriety of this forum. The defendants contend first that Capitol's complaint fails to plead facts specifically suggesting that this court has personal jurisdiction. This argument finds no support in the Federal Rules, however. Rule 8(a) requires a party to allege only the grounds for the court's subject-matter jurisdiction, "a short and plain statement of claim showing that the pleader is entitled to relief," and a demand for relief. The court can resolve the issue of personal jurisdiction later, relying on things outside of the pleadings. See *O'Hare International Bank v. Hampton,* 437 F.2d 1173, 1176 (7th Cir.1971) (court can decide issue of personal jurisdiction based on affidavits not contained in complaint).

■ The defendants implicitly recognize this principle, as they have provided the court with two affidavits to assert that this court lacks personal jurisdiction. This court would lack jurisdiction over this diversity action only if the courts of Illinois would lack jurisdiction. See *Young v. Colgate–Palmolive Co.,* 790 F.2d 567, 569 (7th Cir.1986); *Leeco Steel Products v. Ferrostaal Metals Corp.,* 698 F.Supp. 724, 726 (N.D.Ill.1988). Capitol contends that the Illinois courts would have had jurisdiction over these defendants by virtue of the Illinois long-arm statute, which reads in part:

> Any person, whether or not a citizen or resident of this State, who in person or through an agent does any of the acts hereinafter enumerated, thereby submits such person ... to the jurisdiction of the courts of this State as to any cause of action arising from the doing of any such acts:

(1) The transaction of any business within this State; ....

Ill.Rev.Stat. ch. 110, ¶ 2–209 (Smith–Hurd Ann.1988 supp.). Capitol submits that the defendants transacted business within Illinois by virtue of their negotiations between Illinois and Florida and, most importantly, the six-hour meeting in Chicago. While Capitol's unspecific allegations of interstate communications are not enough to amount to "transaction" of business, this court believes that the closing meeting did. This case bears many similarities to *Ronco, Inc. v. Plastics, Inc.*, 539 F.Supp. 391 (N.D. Ill.1982). In *Ronco*, Judge Marshall canvassed the Illinois decisions treating the "transaction of any business" requirement, and held that the Illinois courts would have had jurisdiction over Plastics, Inc. Judge Marshall found jurisdiction based on Plastics' dispatching of an employee to Illinois to conduct substantive contract negotiations, Plastics' voluntary invocation of the benefits and protections of Illinois law, and Plastics' shipping of substantial volumes of its product to Illinois. *Id.* at 395–97.

This case shares two of the three elements which Judge Marshall deemed important under Illinois' transaction of any business requirement. Like Plastics, the defendants here have conducted negotiations in Illinois. The defendants signed the Agreement in Illinois with their attorneys present. Judge Marshall describes what substantially happened here:

> At the meeting, the details of the transaction were laid out, and legally binding contractual changes were made. If this is not "transacting business in Illinois" it is difficult to imagine what it is.

*Id.* at 396. Second, the parties by the Agreement provided that Illinois law would apply. See Complaint, Ex. A at § 16. Invocation of Illinois law is a strong indicator that the party has transacted business in Illinois. See cases cited in *Ronco*, 539 F.Supp. at 396.

This court thus concludes that jurisdiction over the defendants here is proper under Illinois' long-arm statute.[2] There is a further requirement, however, that must be met before this court can actually assert jurisdiction: the court must be satisfied that the defendants had sufficient contacts with Illinois "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Internat. Shoe v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945), quoting *Milliken v. Meyer*, 311 U.S. 457, 463, 61 S.Ct. 339, 343, 85 L.Ed. 278 (1940). Taking jurisdiction over a party does not offend these notions when the assertion of a state's jurisdiction is foreseeable, and when a party performs voluntary acts which indicate that the party assents to that jurisdiction. See *Saylor v. Dyniewski*, 836 F.2d 341, 344 (7th Cir.1988); *Leeco*, 698 F.Supp. at 729. As mentioned above, the defendants voluntarily entered into an agreement which they wished Illinois law to govern. Moreover, they could have foreseen (or at least their attorneys who were present at the closing should have advised them) that as a result of their lengthy meeting in Chicago, during which they substantively negotiated and signed a contract with an Illinois-based corporation, they were subject to the jurisdiction of the Illinois courts.

Capitol thus wins the battle for personal jurisdiction. Nevertheless, it will find itself heading to a court closer to the defendants' home, where Capitol assuredly could have served them to start with. Federal law provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The parties agree that Capitol could have brought this suit in the U.S. District Court for the Southern District of Florida. They disagree, however, as to whether Miami is "clearly more convenient" than Chicago, see *Coffey v. Van Dorn Iron Works*, 796

---

**2.** In light of this holding, this court will not address Capitol's contention that the defendants committed a tort within Illinois, another ground for jurisdiction under Illinois' long-arm statute. See Ill.Rev.Stat. ch. 110, ¶ 2–209(a)(2).

F.2d 217, 219–20 (7th Cir.1986), and where the "interest of justice" lies in this case.

Faced with a similar dispute in *Fossett Corp. v. Gearhart*, 694 F.Supp. 1325, 1326 (N.D.Ill.1988), this court struck a balance among the plaintiff's choice of forum, the convenience of the parties, the convenience of witnesses who were not parties, and a potpourri of factors loosely called "the interests of justice." The court will proceed no differently in this case. Unlike *Fossett*, this case presents the claim of one plaintiff who is an Illinois resident. Capitol's decision to bring this case here is thus entitled to great weight, as *Coffey* holds.

This court, nevertheless, must consider additional factors. Capitol contends that Chicago is more convenient because it will need the testimony and aid of ten persons from the company, all of whom live in this district. Capitol's corporate offices and records are also here. For their part the defendants contend that Maurice and Natalie Cohen, the defendants' corporate offices, and their records are in Miami. While this court is unwilling to say that ten officers beat two—companies in suits against IBM would always lose motions to transfer if this were the only basis for decision—this court is confident in observing that, on the basis of the parties' convenience, the choice between Chicago and Miami is a draw.[3]

The court thus moves on to the third, and perhaps most important, factor: the convenience of witnesses who are not parties. See *Fossett*, 694 F.Supp. at 1327. Who these witnesses are depends on one's characterization of this suit. Capitol contends that this suit tests reality against representations. To that end, it needs only the witnesses to the representations—Capitol names five such witnesses, all of whom live in this district—and the witnesses to the realities, which Capitol submits it can evidence through documents.

The defendants grant Capitol its first assertion, but not the second. They contend that this court will have to hear evidence about the plating facility's compliance with local, state, and federal environmental laws. To this end, the defendants claim this court will have to hear the testimony of officials of DERM, who allegedly were responsible for approving plans for the plating facility, and that of five engineering or operations consultants who aided the Cohens in assessing the facility's compliance before and after this litigation began. All of these persons live in Florida. The defendants also submit that they will file a counterclaim in this suit, which will require a court to hear the testimony of several other Florida residents.

The defendants' characterization of this case rings truer than Capitol's. Judging whether the defendants breached the Agreement or defrauded Capitol into signing it will likely require more evidence than the Agreement itself, or affidavits indicating the lack of compliance certificates. In order to demonstrate fraud, for example, Capitol may have to show scienter. The defendants may need to counter Capitol's evidence of scienter with the testimony of experts whom the defendants retained prior to the sale. The magnitude of the defendants' alleged breach similarly could require more testimony than Capitol claims.

This court's description of the apparent need for the non-party witnesses in this case nicely leads the court a discussion of the "interests of justice." As this court noted in *Fossett*, the "interests of justice" encompass many things. One is efficiency. It appears, for example, that there will be more non-party witnesses in Florida than in Illinois. The parties surely will want to depose them, and it is efficient for such discovery to proceed under the supervision of a judicial officer who is nearby. See *Fossett*, 694 F.Supp. at 1327. A second consideration is which law will govern this dispute. As noted above, the Agreement is subject to Illinois law, and it is in the interest of justice for a court familiar with illinois law to determine issues subject to that law. *Id.* On the other hand, other

---

3. The court will not take notice of the current prevailing temperatures in each of the two

places, for fear of undue prejudice to Capitol.

relevant legal issues will turn on Dade County and Florida regulations; it would be equally appropriate—if not more so, given that environmental laws are in greater need of judicial development than contract principles—to have a court sitting in Florida determine those issues.

One element missing from *Fossett* which is present here is real estate. Disputes involving land have historically had a "local" flavor to them. See, for example, 28 U.S.C. § 1403 (condemnation proceedings for land to be used for United States shall be brought where the land is located); *Chicago, Rock Island and Pacific Railroad Co. v. Igoe*, 220 F.2d 299, 304 & n. 4 (7th Cir.1955) (interest of justice to transfer action to place of actions giving rise to suit). It is in the public interest, and thus in the interest of justice, that suits involving local interests be decided in the locality itself. See *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 509–12, 67 S.Ct. 839, 843–45, 91 L.Ed. 1055 (1947); *Kephart v. United States*, 242 F.Supp. 469, 470–71 (E.D.Pa. 1965). This court believes that a jury of Florida citizens would show greater understanding of and have a keener interest in a proceeding dealing essentially with Florida land than an Illinois jury would. It would also share with the Florida courts a more profound appreciation for the state's unique ecology, as well as the area's greatest environmental concerns. This court thus holds that, for the sake of convenience and the interests of justice, this case should be transferred to the Southern District of Florida.

In summary, this court denies Capitol's motion for costs of service. This court further denies the defendants' motion to dismiss for lack of personal jurisdiction, but grants their motion to transfer this case to the Southern District of Florida.