NATIONAL HYDRO SYSTEMS, A DI-VISION OF McNISH CORPORATION, Plaintiff,

v.

SUMMIT CONSTRUCTORS, INC., and The Industrial Company of Steamboat Springs, Inc., Defendants.

No. 88 C 10975.

United States District Court, N.D. Illinois, E.D.

Dec. 14, 1989.

Steven B. Varick and Marc L. Fogelberg, McBride, Baker & Coles, Chicago, Ill., for plaintiff.

Thomas C. Clark, William J. Winger and Susan M. Mongillo, Ross & Hardies, Chicago, Ill., for defendants.

MEMORANDUM OPINION

BRIAN BARNETT DUFF, District Judge.

Summit Contractors, Inc. and The Industrial Company of Steamboat Springs, Inc. ("TIC") have moved to dismiss the complaint of National Hydro Systems under Rules 12(b)(2)–(3), Fed.R.Civ.Pro. In the

alternative, Summit and TIC ask this court to transfer this case to the court for the District of Colorado. While this court must deny the motion to dismiss, the court believes that the case indeed warrants transfer pursuant to 28 U.S.C. § 1404(a) (1982).

In ruling on a motion to dismiss under Rules 12(b)(2)–(3), the court must resolve the factual conflicts in the parties' submissions in favor of the plaintiff, and draw any reasonable inferences from those facts in the plaintiff's favor. See *Deluxe Ice Cream Co. v. R.C.H. Tool Corp.*, 726 F.2d 1209, 1215 (7th Cir.1984); *J. Walker & Sons v. DeMert & Dougherty, Inc.*, 821 F.2d 399, 402 (7th Cir.1987).

National Hydro is a division of McNish Corporation, an Ohio corporation which has its principal place of business in Illinois. Summit and TIC are Colorado and Delaware corporations, respectively; each has its principal place of business in Colorado. The latter companies had a joint venture, Summit/TIC. In the summer of 1988, Summit/TIC was gathering information in order to submit a bid to construct a nitrification facility for a Denver sewage disposal district. Summit/TIC received a written quotation from MISCO Rocky Mountain, National Hydro's authorized representative in Denver. National Hydro hoped to supply a circular sludge collector for the project. Had National Hydro received Summit/TIC's approval, it would have manufactured and shipped the collector largely from Illinois.

In late August 1988, MISCO and National Hydro held a meeting with Summit in Denver. Summit/TIC then submitted its bid to the sewage district, and sent National Hydro a letter of intent. The letter stated that Summit/TIC intended to buy National Hydro's collector were Summit/TIC the low bidder on the sewage project. On October 6, 1988, after learning it was the low bidder, Summit/TIC sent National Hydro a purchase agreement, again through MISCO. This proposed agreement incorporated the terms of National Hydro's bid, but included other terms as well. It did not include a provision governing choice of law and arbitration of disputes.

National Hydro received Summit/TIC's written proposal on October 17, 1988. The companies then had many discussions relating to the sale of the collector, mostly over the phone between Denver and Chicago, but a few in face-to-face meetings in Denver as well. During these discussions National Hydro allegedly advised Summit/TIC that it was beginning work on the collector, so that it could meet Summit/TIC's timetable. Soon National Hydro submitted a writing to Summit/TIC which allegedly accepted the essential terms of Summit/TIC's purchase agreement, modified others, and added a few terms of its own. National Hydro included a copy of its standard "Terms and Conditions of Sale," whose terms read in part:

15. CHOICE OF LAW—The agreement between NATIONAL HYDRO SYSTEMS and Purchaser and all matters connected with the performance thereof shall be construed in accordance with, and governed by, the law of the State of Illinois....

19. ARBITRATION—Any controversy or claim arising out of or relating to this agreement, or the breach thereof, including Purchaser's failure to make any required payments to NATIONAL HYDRO SYSTEMS, shall be settled in Aurora, Illinois by arbitration in accordance with the Rules of the American Arbitration Association, and judgment upon the award rendered by the Arbitrator may be entered in any Court having jurisdiction thereof....

After submission of this offer, the parties met on November 16, 1988, again in Denver. According to National Hydro, the parties agreed on the remaining terms at this meeting. Summit/TIC followed up on this meeting by sending a letter to National Hydro the next day; this letter stated that the terms of National Hydro's standard agreement were acceptable to the extent that they did not conflict with the terms of the Summit/TIC purchase agreement.

Three weeks later Summit/TIC allegedly received word from National Hydro that it

would be, in Summit/TIC's eyes, late in delivering the sludge collector. This prompted more discussions between the companies; according to National Hydro, the result of these discussions was Summit/TIC's repudiation of the November 16th contract. National Hydro then filed a two-count complaint in this court, one for a declaratory judgment that the parties should arbitrate their dispute under the contract, and one for damages on account of Summit/TIC's alleged fraud.

■ Summit and TIC first argue that this court lacks jurisdiction over them. A federal court has jurisdiction over a defendant when the plaintiff has served the defendant properly according to a statute or rule, and has accomplished such service in accord with due process. See *Omni Capital Int'l v. Rudolf Wolff & Co.*, 484 U.S. 97, 104, 108 S.Ct. 404, 409, 98 L.Ed.2d 415 (1987); *Rose v. Franchetti*, 713 F.Supp. 1203, 1205 (N.D.Ill.1989). Like the defendant in *Rose,* Summit and TIC do not question the form of the service they received; they question only by what authority National Hydro served them.

National Hydro responds that Summit and TIC themselves authorized service, by consenting to arbitrate before a forum within this federal district. Many courts have recognized that an agreement to arbitrate is meaningless unless some court has the power to compel arbitration in the chosen forum. Typically, that court is the one where the forum is. See *Merrill Lynch, Pierce, Fenner & Smith v. Lecopulos*, 553 F.2d 842, 844–45 (2d Cir.1977); *Mutual Fire, Marine and Inland Ins. Co. v. Barry*, 646 F.Supp. 831, 833–34 (E.D.Pa.1986). Here, National Hydro has invoked this court's diversity jurisdiction; for purposes of this case, this court is a state court, one embracing the site of a chosen forum.

Summit and TIC respond that they did not agree to arbitrate this dispute in Illinois, and so the arbitration clause does not waive their right to contest the jurisdiction of this court over them. Summit and TIC ignore the posture of this case, and the court's duty on the present motion. The facts as alleged are that the parties had a contract, and that one of the promises contained in this contract was one to arbitrate. Summit and TIC may contest this, and they are free to insist in later motions that this court lacks jurisdiction over their persons, but their right to deny the contract does not defeat National Hydro's right to assert the contract's existence, at least for purposes of a motion under Rule 12(b)(2).

■ Having successfully asserted Summit and TIC's waiver of their right to contest this court's jurisdiction over them, National Hydro will waste little effort in defeating their motion to dismiss for lack of proper venue. When a plaintiff presents the court with a forum-selection clause such as the one contained in the parties' alleged agreement to arbitrate, the defendant waives not only his or her right to contest personal jurisdiction, but the right to challenge venue as well. See *Barry,* 646 F.Supp. at 833–34.

■ Notwithstanding the propriety of this venue, Summit and TIC move for transfer of this action to the District of Colorado. Because National Hydro could have brought its case to this court, Summit and TIC's motion must proceed under 28 U.S.C. § 1404(a). That statute provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The parties agree that National Hydro could have sued Summit and TIC in the District of Colorado. They disagree over whether the District of Colorado is a "clearly more convenient" forum than this forum, see *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219–20 (7th Cir.1986), and where the interests of justice lie in this matter. As this court noted in *Fossett Corp. v. Gearhart*, 694 F.Supp. 1325, 1326 (N.D.Il.1988), "While what is 'convenient' or 'just' often lies in the eye of the beholder, courts generally have reduced the analysis of venue questions to the balancing of four factors: the plaintiff's choice of forum, the convenience of the parties, the convenience of witnesses who are not parties, and the catch-all 'interest of justice.'"

As *Coffey*'s standard indicates, the court must give the plaintiff's choice of forum great weight, unless the forum has no relation to the cause of action or the other interests clearly tilt in favor of transfer. National Hydro chose this forum, and the court must respect that choice: National Hydro's offices are located in this district; it is where the company was to perform part of its alleged contract, and some of the negotiations for that contract occurred over the phone with Chicago persons.

National Hydro thinks that it can do even better than this. The company argues that not only did it select this forum, but the defendants did too, by virtue of the forum-selection clause. The defendants understandably do not concede this, and the court must note their opposition. The Supreme Court noted last year in *Stewart Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22, 108 S.Ct. 2239, 2245, 101 L.Ed.2d 22 (1988), that a forum-selection clause "should receive neither dispositive consideration ... nor no consideration" when a court is trying to decide whether to transfer a case under § 1404(a). Instead, the court must weigh the clause in the context of the facts of the case, as it would any other fact relevant to determining the motion to transfer. See *Stewart*, 108 S.Ct. at 2244.

Here, the validity of the forum-selection clause is entwined with the merits of this case: did the parties have a contract, and if so, what were its terms? The court is not prepared to give a forum-selection clause decisive weight on a motion to transfer where the validity of the clause is in dispute. Unlike a motion to dismiss under Rule 12(b), the court on a motion to transfer need not accept the plaintiff's allegations as true. See Charles Alan Wright, Arthur R. Miller, and Edward H. Cooper, 15 Federal Practice and Procedure § 3844 (West 1986). The court will recognize the parties' dispute over this fact, and give the fact some, but not great, weight.

Despite failing to convince the court that the defendants chose this forum, National Hydro still benefits from the presumption that this case should stay here by virtue of their choosing it. The second factor listed in *Fossett* by contrast tilts in Summit and TIC's favor. While most of National Hydro's records and witnesses are in Chicago, it did have an agent in Denver, MISCO, who will be a material witness in this case. As for the defendants, both companies have all of their operations and witnesses in Colorado. The parties' briefs are sketchy on the numbers, but it seems that more party witnesses live in Colorado than in Illinois.

The third factor, the convenience of witnesses who are not parties, is usually quite important. See *Fossett*, 694 F.Supp. at 1327. It has no importance in this case, as neither party has identified any such witnesses. The court thus turns to the interests of justice. As *Coffey* notes, the interests of justice largely center on the efficient determination of cases. See *Coffey*, 796 F.2d at 220–21. National Hydro has identified only one feature of this case which may weigh in its favor: the governing law. As noted earlier, the parties may have agreed to let Illinois law govern their contract. If this were so, it would be more efficient to have this court, one familiar with Illinois law, decide the case. See *id.* at 221. But this factor does not weigh decisively in National Hydro's favor, for the court would follow the choice-of-law clause only if this were part of the contract between them, and the existence and content of the alleged contract is very much in dispute. The only thing that is certain is that Illinois choice-of-law principles will govern this case, no matter whether this court or the district court for the District of Colorado decides this case. See *Klaxon Co. v. Stentor Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941) (choice-of-law principles of forum state govern federal suits brought under diversity jurisdiction); *Van Dusen v. Barrack*, 376 U.S. 612, 639, 84 S.Ct. 805, 820, 11 L.Ed.2d 945 (1964) (forum to which a case is transferred under § 1404(a) is "obligated to apply the state law that would have been applied if there had been no change of venue").

At a minimum, Illinois law will cover one substantive issue; at most, it will govern

all substantive issues. All of this depends on whether the parties had a contract. The court must ponder, however, what this case would be like if the parties did not have a contract. Without a contract, this court could lack jurisdiction over Summit/TIC, and Illinois law might not apply to the dispute. National Hydro's contract claim would disappear, leaving its fraud claim. At that point it is conceivable that National Hydro would beg the court for a transfer to Colorado pursuant to 28 U.S.C. § 1406(a) in order to regain personal jurisdiction.

Because it is not certain that it will be efficient to try this case here, and in light of the possibility that this case would have to go to Colorado anyway were National Hydro's allegations about the contract not true, the court believes that it can serve the interest of justice best by transferring this case to the District of Colorado. Without intending any prejudice to the merits of National Hydro's case, the court believes that there is a legitimate possibility that the parties did not have a contract and that this court ultimately would find that it lacks personal jurisdiction over Summit and TIC. The court also believes that the federal district court for the District of Colorado would not have much difficulty applying Illinois' choice-of-law and contract principles to this case.*

National Hydro insists that only this court can compel arbitration in this case, and for this reason the interests of justice dictate keeping this case here. National Hydro's argument rests on § 4 of the Federal Arbitration Act, 9 U.S.C. § 4 (1982), which provides that a district court can compel arbitration only in the district where the court sits. See *Snyder v. Smith*, 736 F.2d 409, 419–20 (7th Cir.1984). Interestingly, National Hydro's position actually undercuts its contract claim. As noted before, National Hydro asserts that its contract provided that Illinois law governed it. This would mean that the Illinois Arbitration Act, Ill.Rev.Stat. ch. 10, ¶¶ 101 et seq. (1987), and not the Federal Arbitration

Act, would control the question of which court can compel arbitration. See *Volt Info. Sciences v. Bd. of Trustees*, 489 U.S. 468, 109 S.Ct. 1248, 1254–56, 103 L.Ed.2d 488 (1989) (Federal Arbitration Act does not preempt application of state arbitration acts where parties have consented to application of state law); *Cindy's Candle Co. v. WNS, Inc.*, 714 F.Supp. 973, 975 (N.D.Ill. 1989) (agreements to arbitrate are simply agreements, amenable to usual principles of contract law). The Illinois Act, unlike its federal counterpart, does not limit the court's power to compel arbitration to the district in which the court sits. See Ill.Rev. Stat. ch. 10 at ¶ 102. The District of Colorado probably will have no problems applying the Illinois Act if need be, as Colorado's Arbitration Act is nearly identical to the Illinois Act, both having stemmed from the Uniform Arbitration Act. See Colo.Rev. Stat. 13–22–201 et seq. (1988).

From this the court believes that transfer to the District of Colorado is proper, at least until that court resolves the question of whether the parties had a binding agreement as of November 16, 1988. While National Hydro chose to bring its suit here, it had purposeful contacts with Summit and TIC in Colorado, and had an agent in Colorado to deal with the companies. More witnesses are there, and if it turns out that National Hydro did not have a contract with Summit/TIC as of November 16, the court there will be able to enter a judgment binding on all of the parties on all of National Hydro's claims—including those in Count 2—without having the parties maneuver to transfer the case to Colorado, the only court which would have jurisdiction over these defendants if the parties did not have a contract providing for jurisdiction here. If it turns out that the parties did have a contract, it will be an easy matter for the court in Colorado to order the parties to adhere to their contract and begin arbitration.

---

* For example, both states follow the Restatement (Second) of Conflict of Laws (1971) in determining the law which the court will apply to the contract in dispute. See *Purcell & Wardrope*

*Chtd. v. Hertz Corp.*, 175 Ill.App.3d 1069, 1079, 125 Ill.Dec. 585, 592, 530 N.E.2d 994, 1001 (1988); *Wood Bros. Homes, Inc. v. Walker Adj. Bureau*, 198 Colo. 444, 601 P.2d 1369 (1979).

The court denies Summit and TIC's motion to dismiss National Hydro's complaint under Rules 12(b)(2)–(3). The court grants Summit and TIC's motion to transfer this matter to the District of Colorado pursuant to 28 U.S.C. § 1404(a).